**FAYSOUND LIMITED, a corporation, Plaintiff–Appellant,**

v.

**UNITED COCONUT CHEMICALS, INC., et al., Defendant,**

**United States Aviation Underwriters Incorporated, Defendant–Appellee.**

**No. 88–15107.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 10, 1989.

Decided June 26, 1989.

As Amended on Denial of Rehearing Aug. 23, 1989.

---

Graydon S. Staring, Matthew Vafidis, and Lillick, McHose & Charles, San Francisco, Cal., for plaintiff-appellant.

Alfred C. Pfeiffer, Jr. and McCutchen, Doyle, Brown & Enerson, San Francisco, California, for defendant-appellee.

Before WALLACE and NOONAN, Circuit Judges, and DWYER *, District Judge.

NOONAN, Circuit Judge:

Faysound Limited (Faysound) appeals the dismissal by the district court of its suit against United States Aviation Underwriters, Inc., et al. (the Insurers). We affirm.

### HISTORY

In 1982 Faysound, a Hong Kong corporation, leased for five years a Falcon 50 landplane to lessees who ultimately were United Coconut Chemicals, Inc.; United Coconut Life Assurance Corp.; United Cocoa Plantations, Inc.; San Pablo Manufacturing Corporation; Legaspi Oil Company, Inc.; Granex Manufacturing Corporation; Iligan Coconut Industries, Inc.; Metroplex Commodities, Inc.; and Lucena Oil Factory, Inc. The nine lessees were all Philippine corporations.

By the terms of the lease the lessees agreed to insure the plane "against loss or damage by accident, fire and theft, to the full replacement value." In the event "of loss or damage of the aircraft beyond repair" the lessees agreed to pay Faysound "the then prevailing market value of the

---

* Honorable William L. Dwyer, United States District Judge for the Western District of Washington, sitting by designation.

aircraft" less any insurance proceeds Faysound had received; the lessees "irrevocably" authorized Faysound to receive any insurance paid pursuant to the policy the lessees agreed to obtain.

The insurance policy obtained by the lessees from the Insurers issued with the names of the insured as of October 28, 1985 being Faysound and eight of the Philippine corporations listed above. Faysound and the eight Philippine corporations were also listed as the loss payees of the policy. The Hull Coverage, in the amount of $10.6 million covered "all risk of physical loss of or damage to the aircraft." The policy was renewed October 28, 1986, omitting Faysound as a loss payee.

Meanwhile, on June 19, 1986, the Presidential Commission on Good Government, an agency of the Republic of the Philippines, had sequestered the Falcon as property unlawfully acquired by Eduardo Cojuangco, Jr., "the Coconut King" associated with Ferdinand and Imelda Marcos, and had brought suit for conveyance to the Republic of the title of the plane and all other property of Cojuangco and associates. Faysound advised the Insurers that they were liable to indemnify Faysound for loss of the plane. Receiving no satisfactory response, Faysound brought suit in the federal district court for Northern California.

In its initial complaint, filed May 14, 1987, Faysound asserted:

The Court's jurisdiction lies under 28 U.S.C. § 1332 since this matter exceeds the sum or value of $10,000 exclusive of interest and costs and is between a citizen of a foreign state and citizens of foreign states and a citizen of a state of the United States.

The plaintiff was identified as Faysound, a Hong Kong corporation. The nine Philippine lessees, plus the United Coconut Planters Bank, were identified as Philippine corporations and defendants. The Insurers were identified as a defendant and as "a corporation incorporated and existing under a state of the United States."

Faysound's complaint alleged that the lessees had defaulted on the lease by "causing and permitting" the sequestration; had failed to make rental payments; and had failed to insure the plane as required. Faysound alleged that the defendant United Coconut Planters Bank had controlled and directed defendant United Coconut Chemical in its use of the Falcon and sought from the bank and the lessees "the full prevailing market value" of the Falcon, or its return. Faysound also sought the full insured value of the Falcon from the Insurers. Faysound added that if the Insurers should agree that the policy covered Faysound's loss, then the Insurer "should be realigned as plaintiffs herein."

On July 24, 1987, seeking a declaratory judgment that they had no liability, the Insurers brought suit in the Supreme Court of the State of New York against Faysound; the Philippine lessees; Eduardo Cojuangco, Jr., identified as "the beneficial owner" of the lessees and "upon information and belief" as the beneficial owner of Faysound; and the Republic of the Philippines, alleged to have "sequestered both the Aircraft and the stock of the Philippine Defendants."

On July 27, 1987, our court issued its decision in *Rockwell International Credit Corp. v. United States Aircraft Insurance Group*, 823 F.2d 302 (9th Cir.1987). We there held that the defendants in that case, who were the same as the Insurers here, were "a group of independent insurance companies," operating as "an unincorporated association." *Id.* at 304. As all members of the group were not diverse from the plaintiff, diversity jurisdiction did not exist, and we remanded that case to the Arizona state court from which it had been wrongly removed. *Id.* at 305.

On August 4, 1987, in response to the *Rockwell* decision and specifically referring to it, Faysound filed an amended complaint in the federal district court for Northern California. The amended complaint now based jurisdiction on the case being "between a citizen of a foreign state and citizens of states of the United States." "Defendants," Faysound added, "maintain an office and do business in the Northern District of California." The defendants were named as United States Aviation Underwriters, Incorporated, a New York corpora-

tion, that acted on behalf of the Insurers, and eleven individual insurance companies which make up the United States Aircraft Insurance Group, the unincorporated association that was a party in *Rockwell*. The eleventh of these companies was Zurich Insurance Company, with the address "Schaumburg [sic], Illinois." Faysound asserted that all of the insurance companies were "citizens of states of the United States."

The amended complaint dropped the Philippine corporations as defendants. It still asserted that the lessees had been required to insure the Falcon to the full replacement value and that no insurance could be paid until Faysound's interest was discharged. The amended complaint added that "Faysound has brought legal action against the Lessees of the Falcon to recover the aircraft or its value."

The last statement apparently referred to suit filed the same day by Faysound in the Superior Court of the County of San Francisco, naming as defendants all of the defendants in its amended federal complaint plus the Philippine corporations that had been defendants in its initial complaint. This state action restated the causes of action against all the defendants that had been presented in Faysound's initial federal complaint. A summons and complaint in this suit were, however, not filed by Faysound until December 10, 1987. On August 5, 1987 Faysound removed the Insurers' case from the Supreme Court of New York to the federal district court for the Southern District of New York.

Meanwhile, on August 14, 1987, Alfred C. Pfeiffer, Jr., an attorney for the Insurers, filed a declaration in the federal district court for Northern California, declaring that Zurich Insurance Company was a Swiss corporation, not incorporated in the United States, with only a branch office in Schaumberg, Illinois. Pfeiffer declared he had consulted with the California Department of Insurance, whose records reflected these facts, and he also attached a report on Zurich Insurance Company appearing in *Best's Insurance Records–Property–Casualty* (1986) that indicated these facts. The

Insurers, therefore, moved to dismiss for lack of diversity because a foreign corporation was both a plaintiff and a defendant. Three weeks later, on September 14, 1987, Faysound "without conceding the grounds" for the Insurers' argument moved to amend its complaint again, to omit Zurich Insurance Company as a defendant.

On December 7, 1987, the district court for Northern California dismissed Faysound's action. The court found it unnecessary to rule on the effect of Zurich Insurance Company's presence on diversity jurisdiction or on Faysound's motion to amend to omit Zurich. The district court focused on the question whether the Philippine lessees were indispensable parties. The court noted that if they were not parties, the Insurers faced the threat of suits by the lessees in addition to the suit by Faysound and further that the lessees themselves would be prejudiced if the right to the insurance was adjudicated in their absence. Invoking Fed.R.Civ.P. 19, the court held the lessees to be indispensable. Their presence in the suit as defendants destroyed diversity, as foreign corporations were then both plaintiff and defendants.

Faysound argued that the lessees could be realigned as plaintiffs, since both Faysound and the lessees were interested in the object of the suit, the recovery of the insurance. The court found the argument "disingenuous in light of plaintiff's first complaint which named all the lessees as defendants and stated interests adverse to the lessees." The amended complaint and the proposed second complaint also, in the court's view, stated "claims and interests adverse to the lessees'." The court refused to realign.

Faysound, as noted above, then proceeded with service in its California state court suit. It also on December 17, 1987 filed a motion for reconsideration of the district court's order of December 7, 1987. The motion was made upon three grounds for concluding that the court's reasoning had been wrong. Accompanying the motion was an affidavit by an attorney for Faysound in New York, representing that the defendants in that case had raised the issue

of in personam jurisdiction over them in New York. By order dated January 19, 1988 the district court took under submission the motion for reconsideration.

As of May 23, 1988 the district court had not ruled on this motion. On that date Faysound filed a declaration that Faysound had reached an agreement with the lessees whereby they disclaimed "any right or interest" in the insurance. Copies of letters to this effect were attached. Faysound moved to resubmit its motion for reconsideration and under Fed.R.Civ.P. 15(d) to file a "supplemental complaint," setting out transactions or occurrences since the filing of the first amended complaint, since the court's order of dismissal, and since the filing of the motion for reconsideration. The proffered supplemental complaint stated the lessees had agreed that they had no interest in the insurance.

On July 6, 1988 the district court denied Faysound's motion for reconsideration. The court found the motion's substance to be reargument of points already made to the court. As to Faysound's motion to resubmit, the court held that it could not be a Rule 59(b) motion because not made within 10 days of the entry of judgment and that the motion did not fall within any of the grounds for permitting relief from judgment under Rule 60(b)(2). As to the motion to file a supplemental complaint, the court ruled that it was untimely. It said: "Assuming that the Philippine defendants have no interest in the outcome of this litigation, that fact was as true then [at the time of the motion to dismiss] as it is now and the plaintiff was then perfectly able to come up with affidavits establishing the lack of interest."

This appeal followed the entry of final judgment on July 29, 1988, dismissing the action. On appeal Faysound attacks the rulings that the lessees are indispensable and that they would not be realigned as plaintiffs. It further contends that the court abused its discretion in not allowing the supplemental complaint. Finally, it contends that "an action between an alien plaintiff and a citizen defendant does not violate diversity of citizenship under 28 U.S.C. § 1332."

## ANALYSIS

■ 1. *The Requirement of Complete Diversity.* We begin with Faysound's final contention. In *Montalet v. Murray,* 8 U.S. (4 Cranch) 46, 2 L.Ed. 545 (1807) a citizen of New York sued a citizen of France on promissory notes of which the New Yorker was the assignee. It appeared on the face of the plea that the payee of the notes was also an alien. The terse report reads: "The Court was unanimously of opinion that the courts of the United States have no jurisdiction of cases between aliens." *Id.* 8 U.S. (4 Cranch) at 46.

Our own court has adhered to this rule: "Diversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants." *Cheng v. Boeing Co.,* 708 F.2d 1406, 1412 (9th Cir.) *cert. denied,* 464 U.S. 1017, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983). In *Boeing,* the presence of citizen defendants did not preserve jurisdiction as to the alien. True, the case was not dismissed for want of jurisdiction as to the citizens, but the alien was not treated as an indispensable party and so could be dismissed without destroying jurisdiction over the citizen defendants. Where an alien is made co-defendant with a citizen-defendant by an alien plaintiff, *Boeing* is dispositive: there is no jurisdiction over the alien. If the alien defendant is indispensable, *Boeing* clearly implies, there is no jurisdiction at all.

As a panel of this court we have no authority to depart from *Boeing.* Nor is there reason to want to do so. "Garden variety contract actions," as the district court termed this action, can find an adequate forum in the courts of the states. The issues of this particular action are presently before the courts of California and their equivalents are before the federal district court for the Southern District of New York. No reason occurs why we should seek to expand our jurisdiction by overturning the simple, firm, long-established, and unbroken interpretation of the jurisdictional statute, 28 U.S.C.

§ 1332(a)(2). As to the meaning of this statute the rule established by Chief Justice Marshall controls: diversity must be complete. *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978); *Montalet, supra; Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

In terms of this long-established interpretation, Faysound's original complaint asserting that there was federal jurisdiction in a suit between "citizens of a foreign state and citizens of foreign states and a citizen of a state of the United States" asserted jurisdiction where none existed.

■ Faysound's amended complaint also stumbled on the diversity issue, both in a minor and in a major way. Faysound knew from the opinion in *Rockwell, supra,* to which the amended complaint made reference, that it was crucial for the purpose of establishing federal jurisdiction to establish that each of the Insurers was diverse from the plaintiff. But Faysound did not make the slight investigation that was necessary to discover whether or not Zurich Insurance Company was a foreign corporation. Without investigation, Faysound asserted the citizenship of Zurich and again asserted the existence of jurisdiction where none existed. Even when put on notice of the true facts by the Pfeiffer Declaration, Faysound did not concede its error.

The presence of Zurich as a defendant alone defeats jurisdiction because diversity is not complete. As the district court did not rule on Faysound's motion to drop Zurich, we do not reach the question of whether it would have been within the district court's discretion to deny the motion or whether Faysound should have been permitted to cure this defect. We proceed to Faysound's major hurdle.

■ 2. *The Indispensability of the Lessees.* When it filed its amended complaint, Faysound had evidently reconsidered the view of jurisdiction it had first asserted and defends again on appeal; it therefore tried to eliminate the Philippine defendants it knew were foreign corporations. Faysound denies that they were indispensable. Nonetheless, the lessees were the only parties named as loss payees on the insurance renewed in October 1986, if the renewal became relevant, and the lessees were the co-insured in the insurance apparently in effect when the Republic of the Philippines first took possession of the Falcon. Faysound could prevail on the renewed policy only by reforming it to the lessees' detriment. There was also a built-in conflict between the lessees and Faysound. If the lessees were liable to Faysound under the lease provision they had to pay "full replacement value." If they simply "lost" the plane, they were liable for a market value that could be considerably less.

In addition to this conflict created by the terms of the lease and the terms of the insurance, Faysound had asserted in a complaint whose allegations Faysound must have believed were true that the lessees had defaulted on the lease and caused the sequestration—acts that might have voided whatever insurance they had. To have proceeded without the lessees would, as the district court rightly concluded, have prejudiced them. And, of course, it would have prejudiced the Insurers who under the 1985 policy would have been exposed to claims from both the lessor and the lessees and under the renewed policy would have had to defend claims against a plaintiff which did not even appear as a loss payee of the policy the Insurers had issued.

No suggestion was made by Faysound as to a procedure or judgment that would have prevented this prejudice to the lessees and the Insurers. The lessees were indispensable.

■ 3. *The Non–Alignability of the Lessees.* Faysound, which in its opening complaint suggested that the Insurers might be realigned as its co-plaintiff, ended by proposing that the lessees be its co-plaintiffs. Realignment by the court of the parties has often been used to prevent the sham creations of diversity jurisdiction. *Indianapolis v. Chase National Bank,* 314 U.S. 63, 76, 62 S.Ct. 15, 20, 86 L.Ed. 47 (1941) (the court will not "yield to illusive artifices"). It has been found not inappro-

priate to permit realignment with another result—the creation of diversity jurisdiction. *Standard Oil Co. of California v. Perkins,* 347 F.2d 379, 382 (9th Cir.1965). The practice cannot be challenged now. The question before us is whether as a matter of law Faysound was entitled to realignment here.

We hold that it was not. On the basis of what the district court knew when it ruled on December 7, 1987, Faysound and the lessees were not "partners in litigation." *See Indianapolis,* 314 U.S. at 74, 62 S.Ct. at 19. Faysound had proclaimed the lessees as adversaries in its first complaint.

On December 10, 1987 Faysound treated the lessees as adversaries in the courts of California (and as indispensable parties in its state suit against the Insurers).

Faysound offered no information to the district court as to what the Insurers alleged on information and belief in their New York suit, that Faysound and the lessees were all beneficially owned by Eduardo Cojuangco, Jr. On the face of the documents filed by Faysound and on at least one reading of the lease and insurance policies, Faysound and the lessees were adverse. There was no requirement of law that the district court make them co-plaintiffs.

Being indispensable and not being realigned, the lessees destroyed diversity.

4. *The Ruling on the Motion to Reconsider.* The motion to reconsider rehashed what had been before the court when it ruled in December. The district court properly ruled that it stated grounds for appeal, not for reconsideration by the district court.

■ 5. *The Rulings on the Motion to Resubmit and the Motion to File A Supplemental Complaint.* Faysound contends that the district court abused its discretion by appearing to analyze these motions under Rule 59(b) and 60(b)(2) rather than under 15(d). We agree that consideration should have been under 15(d) but do not find that analysis under this head leads to a conclusion different from the district

court's. *Angle v. United States,* 709 F.2d 570, 573 (9th Cir.1983) (this court may affirm on any basis in the record).

If, as the district court interpreted the disclaimers of interest, the disclaimers merely stated facts true in December 1987, there was no reason to let the plaintiff supplement its complaint with facts it could and should have presented when it was resisting the motion to dismiss. The facts did not qualify as subsequent events and so did not give a basis for invoking Rule 15(d). If, on the other hand, as some language in the disclaimers and attendant declarations suggest, the disclaimers were newly-obtained waivers of interest, the result of a negotiated settlement, with fresh consideration given and received, they were then new occurrences or transactions and so within the scope of Rule 15(d). But new transactions do not help Faysound to show jurisdiction.

Jurisdiction is to be determined as it exists at the time it was invoked. Subsequent events do not confer jurisdiction. *Mann v. City of Tucson,* 782 F.2d 790, 794 (9th Cir.1986). What happened in May 1988 could not confer jurisdiction in December 1987. Nor was it material that the district court had before it Faysound's motion for reconsideration. This motion was addressed to the correctness of the court's December 7, 1987 order. The events of May 1988 could not change the facts of December 1987 and make incorrect the court's December determination that jurisdiction was non-existent.

AFFIRMED.