Argued July 17, affirmed September 11, 1970

# CONTINENTAL FOREST PRODUCTS, INC., *Respondent, v.* WHITE LUMBER SALES, INC., *Appellant.*

474 P2d 1

*William B. Crow*, Portland, argued the cause for appellant. With him on the briefs were King, Miller, Anderson, Nash & Yerke, Portland.

*Denton G. Burdick, Jr.*, Portland, argued the cause for respondent. With him on the brief were Hutchinson, Schwab & Burdick, Portland.

Before O'Connell, Chief Justice, and Sloan, Holman and Howell, Justices.

## SLOAN, J.

This is an action by plaintiff for the alleged wrongful breach of a contract for the sale by plaintiff to defendant of 20 carloads of plywood. The contract was an installment contract as defined by ORS 72.6120 (1) (UCC 2-612(11)).[1] The carloads of plywood were to be shipped by plaintiff to Gainesville, Georgia. The contract was also subject to the applicable rules and provisions of a trade code known as U.S. Products Standard PS 1-66, the pertinent section of which is also attached as an appendix to this opinion.

The first carload arrived in Gainesville, Georgia, on January 4, 1967. Defendant concluded that this car did not meet the specifications of the contract. On January 17, 1967, defendant served notice on plaintiff of its intent to cancel the contract because of the failure of the first carload to conform to specifications. Defendant alleged that a substantial amount of the plywood was too thin. In the meantime, plaintiff had already shipped the second and third carloads, as per the contract. The second carload arrived at Gaines-

---

[1] The pertinent sections of the code that are mentioned in this opinion are attached as an appendix.

ville, Georgia, while the third carload was stopped enroute after the cancellation.

After the cancellation the parties agreed to an inspection of the first two carloads of plywood to be made in accordance with the U.S. Products Standard PS 1-66, which was, as mentioned, a part of the agreement. The standard for conformance to specifications provides that a variance of 5 per cent from specifications is allowable. A variance above 5 per cent, however, permits the buyer to reject the nonconforming plywood but does not allow a cancellation or rejection of the entire shipment. The inspection of the first carload disclosed a variance of 9 per cent. The second carload was within the 5 per cent tolerance. Defendant paid for the first carload without deduction for the deviation from the specifications but refused to pay for any of the other cars. The last two carloads were sold to other buyers.

As a result of defendant's attempted cancellation of the entire contract, plaintiff brought this action to recover his damages. In an action tried without a jury, the trial court made extensive findings of fact in favor of plaintiff and judgment was entered accordingly. Defendant appeals.

The record submitted to this court is unique in that it contains only the findings of fact and conclusions of law of the trial court. It is defendant's contention that certain language used by the court, in its findings and conclusions, will not support the judgment.

Subsection 2 of ORS 72.6120 permits the buyer to reject an installment "which is nonconforming if the nonconformity substantially impairs the value of that instalment and cannot be cured * * *." On the

other hand, subsection 3 permits the buyer to reject the entire contract if the nonconformity or default in respect to one or more of the installments "substantially impairs the value of the whole contract * * *."

The trial court's specific findings with respect to delivery, testing, and other specific facts relating to the conformance of the shipments from plaintiff to defendant, would sustain a conclusion that this was a nonconformity as defined in subsection 2 of the statute and could be cured. However, in a conclusionary finding of fact made by the trial court, the court found "such breach as to thickness in the plywood contained in the first car * * * constituted a material breach and entitled the defendant to request assurance that future shipments would conform to the contract. The second inspected did so conform." And, as a conclusion of law, the trial court stated "the failure of the first car to meet the specifications of the contract constituted a material breach of the contract and allowed defendant to request further reasonable assurances of performance."

Defendant's entire argument on appeal is based upon the findings and conclusions just quoted. It is defendant's contention that, particularly in respect to the conclusion of law just quoted, the trial court's language that failure "to meet the specifications of the contract constituted a material breach of the contract" was the equivalent of the requirements of subsection 3 of the statute, to wit: the nonconformity substantially impaired the value of the whole contract and was, therefore, a breach of the whole. Taken out of the total context, without regard to the other specific findings of what actually occurred in this situation, defendant's contention appears to have merit. However, the total findings and the facts set forth therein lead to

the inevitable conclusion that the ambiguity in the trial court's findings must be resolved to mean that the nonconformity only impaired the value of the first installment and, more importantly, that the nonconformity could be "cured."

Authority relating to the application of subsections 2 and 3 of this section of the code is scarce, but the existing authority conforms to the following statement found in 3 Duesenberg & King, Bender's Uniform Commercial Code Service, § 14-02 (3) (i) pages 14-25:

> "As far as any nonconforming installment is concerned, the buyer may only reject if there is substantial impairment regarding the value of that installment and when the substantial impairment cannot be cured. Thus, it is clear that three things are necessary for a buyer to be able to reject an installment. Assuming that the nonconformity exists, the nonconformity must impair the value of that installment and such impairment must be substantial; the third element is that the defect giving rise to the nonconformity cannot be cured."

In regard to a situation in which the buyer may claim a violation of subsection 3, the authors at pages 14-27, 28 state:

> "Some matters are clear from this section. If there is a minor breach which is curable by the seller, the installment must be accepted and the buyer cannot cancel the contract. He would be entitled, however, under Section 2-609 to demand adequate assurance of performance."

Peters, Remedies for Breach of Contracts, 1963, 73 Yale L J 199, at 225, states:

> "* * * The section is reasonably clear at the extremes. If the breach is trivial and curable, the buyer must accept the installment and cannot categorically refuse further installments. * * *."

Paragraph 5 of the official comments to this section of the code states:

"Cure of nonconformity of the installment in the first instance can usually be afforded by an allowance against the price, * * *."

■ The parties in this instance do not dispute that the word "cure" includes price deduction for nonconformity. Therefore, we are not required to decide what other methods of cure may have existed or should be required. The trade standards adopted by the parties provide that the buyer may reject that part of the shipment which is more than 5 per cent below grade and "shall accept the balance of the shipment as invoiced." The necessary implication is that the rejected plywood need not be paid for but does not allow a total rejection. Thus, by adopting the trade standards, the parties also bargained for a reduction in price as a method of cure.

■ The parties dispute the applicability of ORS 72.6090. Defendant argues that the trial court apparently based its conclusions in part, on the requirements of the latter section and if so, that the assurances provided for and permitted by ORS 72.6090 are not applicable to the given case. Plaintiff argues to the contrary.

We consider it unnecessary in this case to decide the extent to which the assurances and provisions of ORS 72.6090 relate to ORS 72.6120. As above stated, we are satisfied that the actual facts found by the trial court and included within his finding of fact, which are not disputed, demonstrate that this was actually a minor deviation from conformity and curable within the meaning of subsection 2 of ORS 72.6120.

The judgment is affirmed.

## APPENDIX

72.5080   Cure by seller of improper tender or delivery; replacement. (1) Where any tender or delivery by the seller is rejected because nonconforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

(2) Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender. [1961 c.726 § 72.5080]

72.6090   Right to adequate assurance of performance. (1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.

(2) Between merchants the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards.

(3) Acceptance of any improper delivery or payment does not prejudice the aggrieved party's right to demand adequate assurance of future performance.

(4) After receipt of a justified demand failure to provide within a reasonable time not exceeding 30 days

such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract. [1961 c.726 § 72.6090]

72.6120 "Instalment contract"; breach. (1) An "instalment contract" is one which requires or authorizes the delivery of goods in separate lots to be separately accepted, even though the contract contains a clause "each delivery is a separate contract" or its equivalent.

(2) The buyer may reject any instalment which is nonconforming if the nonconformity substantially impairs the value of that instalment and cannot be cured or if the nonconformity is a defect in the required documents; but if the nonconformity does not fall within subsection (3) of this section and the seller gives adequate assurance of its cure the buyer must accept that instalment.

(3) Whenever nonconformity or default with respect to one or more instalments substantially impairs the value of the whole contract there is a breach of the whole. But the aggrieved party reinstates the contract if he accepts a nonconforming instalment without seasonably notifying of cancellation or if he brings an action with respect only to past instalments or demands performance as to future instalments. [1961 c.726 § 72.6120]

*U. S. Products Standard PS 1-66*

    A2. Shipment Reinspection Practices—Based on industry practices, the following information on reinspection of plywood shipments is offered purchasers of plywood:

    All complaints regarding the quality of any

shipment must be made within 15 days from receipt.

(a) If the grade of any plywood shipment is in dispute and a reinspection is demanded, the cost of such reinspection shall be borne by the seller if the shipment is more than 5% below grade, and the shipment shall be settled on the basis of the reinspection report. The buyer need not accept those panels established as below grade, but shall accept the balance of the shipment as invoiced.

(b) If reinspection establishes the shipment to be 5% or less below grade, the buyer pays the cost of reinspection and pays for the shipment as invoiced.