0388

GLENNVILLE ELEVATORS, INC., Appellant, v. Floyd BEARD, Respondent.

(326 S. E. (2d) 185)

Court of Appeals

*Grady E. McMehan* and *Charles W. Blackwell, McMehan, Hancock & Blackwell,* Rock Hill, *for appellant.*

*Doyet A. Early, III,* and *Richard Ness, Early & Kemp,* Bamberg, *for respondent.*

Heard Nov. 20, 1984.

Decided Feb. 5, 1985.

CURETON, Judge:

This appeal involves a breach of contract action tried before a master whose decision was affirmed by the circuit court. The master held that respondent Beard was justified in cancelling his contract with appellant Glennville Elevators. We remand for the reason stated below.

The parties entered into an oral agreement in July 1980 whereby Glennville agreed to purchase 75,000 bushels of corn from Beard at a price of $3.25 per bushel[1] to be delivered by Beard to Glennville's place of business in Glennville, Georgia.

Beard began delivery under the contract in August 1980 and delivered a total of nine truckloads of corn. Before his trucks left Bamberg, South Carolina, the quantity and quality of corn was ascertained by a third party. Upon the trucks'

---

[1] The bushels Beard claims to have been shorted when compared to the total bushels to be delivered under the contract, amount to less than one tenth of one percent of the total.

arrival at Glennville's place of business, Glennville conducted its own quality and weight tests. According to Beard, he delivered 11,148.9 bushels of corn to Glennville. Glennville credited Beard with delivering only 11,092.4 bushels or 56.5 bushels less than Beard claimed he delivered. The difference in bushels arose from a variance in scale weights and from a weight adjustment for moisture content.[2]

Beard testified that because Glennville shorted him 56.5 bushels of corn on his first nine deliveries and docked him for moisture content below 15.5 percent, he refused to deliver the balance of the corn under the contract. Glennville then sued Beard to recover the difference between the contract price of $3.25 per bushel and the $4.14 per bushel it had to pay a third party for the undelivered corn.[3]

The master found that Glennville had in fact shortened Beard on the number of bushels of corn delivered and had docked for moisture content that was within acceptable levels. After finding that the contract was an installment contract, the master concluded that Glennville had breached the entire contract and that Beard was justified in cancelling the contract under provisions of S. C. Code Section 36-2-703.[4]

The sole issue raised on appeal is whether the evidence supports the trial court's holding that Beard was justified in cancelling his contract with Glennville.

This case is governed by the provision of the Uniform Commercial Code codified in Chapter 36 of the 1976 South Carolina Code of Laws. Code Section 36-2-612(3) provides:

> Whenever nonconformity or default with respect to one or more installments substantially impairs the value of the whole contract, there is a breach of the whole....

---

[2] Glennville reduced the amount of one load of corn by 6.6 bushels because the corn had a moisture content of 15.2 percent although 15.5 percent is considered the customary maximum allowable moisture content. This deduction is included within the 56.5 bushels Beard claims he was shorted.

[3] Code Section 36-2-712 permits the buyer upon the seller's breach to purchase substitute goods and recover from seller as damages the difference between cost of cover and the contract price.

[4] No exception was taken to the master's conclusion that this was an installment contract. The master made no determination, however, as to what constituted an installment.

And Code Section 36-2-703 states:

> Where the buyer wrongfully . . . fails to make a payment
> due on or before delivery or repudiates with respect to a
> part or the whole, then with respect to any goods directly
> affected and, if the breach is of the whole contract
> (Section 36-2-612), then also with respect to the whole
> undelivered balance, the aggrieved seller may cancel.

To afford Beard a basis for cancelling the subject contract,
he must show that Glennville's breach was so material as to
justify his refusal to deliver the remainder of the corn.
"Whether the nonconformity in any given installment justi-
fies cancellation as to the future [installments] depends not
on whether such nonconformity indicates an intent or like-
lihood that the future deliveries will also be defective, but
whether the nonconformity substantially impairs the value
of the whole contract." *Cundy v. International Trencher
Service, Inc.*, 358 N. W. (2d) 233 (S. D. 1984); *accord, Atlan
Industries, Inc. v. O.E.M., Inc.*, 555 F. Supp. 184 (W. D. Okla.
1983); *Fargo Machine & Tool Co. v. Kearney & Trecker Corp.*,
428 F. Supp. 364 (E. D. Mich. 1977). Whether there is a
substantial impairment of the value of the whole contract is
a question of fact, *Dickson v. U-J Chevrolet Co.*, 454 So. (2d)
964 (Ala. 1984); *Cherwell-Ralli, Inc. v. Rytman Grain Co.,
Inc.*, 180 Conn. 714, 433 A. (2d) 984 (1980), that depends upon
the facts and circumstances of each case. *Colonial Dodge, Inc.
v. Miller*, 121 Mich App. 466, 328 N. W. (2d) 678 (1982).

The master made no findings of fact, as he was required to
do, that Glennville's breach substantially impaired the value
of the entire contract. We therefore remand the case for such
a determination.[5]

---

[5] We have been unable to locate a case from any jurisdiction that clearly
defines "substantial impairment." It is clear however that the purpose of the
requirement of substantial impairment of value as a good for cancellation of
a contract is to preclude cancellation for trivial defects. *Colonial Dodge, Inc.
v. Miller, supra.* The following cases illustrate factual situations where the
breach was found to be trivial and did not impair the value of the whole
contract. *Dickson v. U-J Chevrolet Co., supra* (defective spring on truck that
cost $606.00 to replace was nominal in view of the $39,849 value of the truck);
*Pratt v. Winnebago Industries, Inc.*, 463 F. Supp. 709 (W. D. Pa. 1979) (motor
home repairs costing $400 not substantial where motor home cost $16,000);
*Continental Forest Products, Inc., v. White Lumber Sales, Inc.*, 256 Or. 466,
474 P. (2d) 1 (1970) (variance of four percent below the acceptable grade of
plywood not a substantial variance); 67 Am. Jur. (2d) *Sales* Section 418.

Remanded.

SHAW and GOOLSBY, JJ., concur.