**MUTUELLES UNIES, a French corporation, Plaintiff–Appellee–Cross Appellant,**

v.

**KROLL & LINSTROM, a California Law Partnership, Defendant,**

**and**

**Sol Kroll, et al., Defendants–Appellants–Cross Appellees.**

Nos. 90–55009, 90–55022.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 10, 1992.

Decided Feb. 25, 1992.

Manuel R. Ramos, Lewis, D'Amato, Brisbois & Bisgaard, San Diego, Cal., for defendants-appellants-cross appellees Sol Kroll, et al.

Hillel Chodos, Gina M. Putkoski–Chodos, Los Angeles, Cal., for plaintiff-appellee-cross appellant, Mutuelles Unies.

Before FARRIS, NOONAN and TROTT, Circuit Judges.

FARRIS, Circuit Judge:

In a legal malpractice action, Sol Kroll, individually, and his law firm, Kroll, Pomerantz & Cameron appeal a jury verdict awarding damages to Mutuelles Unies. The appeal questions: 1) the grant of diversity jurisdiction; 2) several jury instructions; 3) the application of California law to the settlement recommendation; 4) the application of Federal Rule of Civil Procedure 17(a); 5) the admission of plaintiff's expert declaration; and 6) the award of pre-judgment interest. Mutuelles cross appeals the denial of its request for additional compensation because of detrimental currency fluctuations. We affirm.

Mutuelles is a French insurance corporation, which provided liability insurance for Club Med. It was obligated to defend Club Med and pay the costs of any lawsuit. Sol Kroll is a founder of the New York law firm Kroll, Pomerantz & Cameron. Mutuelles had a long-term relationship with the law firm, which specializes in representing the interests of foreign insurers in American civil litigation. Kroll served Mutuelles as supervising counsel for all of Mutuelles' American claims litigation. It would personally handle any cases filed in New York. For cases filed elsewhere, it would select local trial counsel and act as supervising counsel.

Kroll: 1) supervised and closely monitored all aspects of any case tried by local counsel; 2) sent a personal representative to monitor the progress of all trials conducted by local counsel; 3) analyzed and periodically updated the potential exposure of Mutuelles for litigation and judgment costs; 4) received any settlement proposals from local counsel; 5) advised Mutuelles of its recommendations for settlement in each case; 6) received and approved all legal expenses of local counsel; and 7) paid local counsel after Mutuelles approved the expenses.

On August 8, 1979, Dr. Morrill, a physician, was seriously injured in a scuba diving accident while vacationing with his wife at a Club Med Resort in Tahiti. The Morrills brought a claim against Club Med for negligent supervision.

The lawsuit was brought in a state court in Los Angeles. Kroll selected local counsel to handle the litigation. Roy Pomerantz was supervising attorney for Kroll.[1] Pomerantz selected Gerald Kroll, the son of Sol Kroll, to act as local counsel. Gerald Kroll enlisted the aid of another attorney, Hugh Linstrom, and the two of them handled the Morrills' lawsuit.

The Morrills demanded damages in the amount of $1.5 million dollars. Kroll offered two to three thousand dollars to settle the case. The Morrills increased their demand to $2,187,000. Kroll and local counsel recommended a settlement offer of $500,000. Mutuelles accepted the recommendation. The Morrills rejected the offer.

In April 1985, two months before trial, Linstrom recommended that Mutuelles offer one million dollars to the Morrills. At a settlement conference immediately prior to trial, Pomerantz recommended a $740,000 settlement offer. Linstrom continued to recommend one million dollars.

The trial began on June 27, 1985. On July 3rd, the Morrills indicated a willingness to accept one million dollars. The trial judge recommended $1,017,000 for settlement. Mutuelles, on the recommendation of Pomerantz, agreed to offer $740,000, which the Morrills rejected.

On July 22nd, Pomerantz sent a telex to Mutuelles recommending an offer of $900,000. He reported that the case had gone to the jury and that a verdict was expected within two days. Mutuelles failed to respond before July 24th, the date on which the jury returned a verdict of $3,071,000 for Dr. Morrill and $980,000 for Mrs. Morrill.

Mutuelles telexed an offer of $900,000 after the jury had returned a verdict. Mutuelles eventually paid a final settlement of $3,115,381, some of which was paid by two other insurance companies, Suisse Re and Lloyd's of London. Mutuelles was lead insurer and made all decisions concerning the handling and settlement of the case.

On July 22, 1986, Mutuelles brought a diversity action in federal court against Kroll, Roy Pomerantz, Kroll & Linstrom, Gerald Kroll, and Hugh Linstrom. Mutuelles claimed that Roy Pomerantz and Kroll were negligent: 1) as supervising counsel and; 2) in their handling of the case. Kroll's answer admitted that each defendant was an American citizen. All parties agreed that California law would govern.

Before trial, the district court ruled that Suisse Re was a real party in interest, but that Lloyd's was not. On July 24, 1989, the district court set an August 25th deadline for Mutuelles to either join Suisse Re to the lawsuit, or file a ratification for Suisse Re pursuant to Fed.R.Civ.P. 17(a). Both Lloyd's and Suisse Re filed timely ratifications.

On September 18th, Mutuelles informed Kroll that John McKay, its only expert witness, would have surgery September 22nd and would be unavailable for one to two weeks. Mutuelles offered to videotape McKay's direct and cross-examination before his pending surgery. Kroll declined the offer.

The trial began on September 21, 1989. That morning, Mutuelles informed the district court that McKay was unavailable from September 22, but was available that afternoon. In September 1987, McKay had submitted a declaration in opposition to Kroll's motion for summary judgment. In 1988, Kroll took McKay's deposition. The district court allowed Mutuelles to read McKay's declaration into the record and permitted Kroll to use his deposition for cross-examination of the declaration.

The jury found that Kroll was negligent in its handling of the Morrill case and awarded Mutuelles damages for the differ-

---

1. Pomerantz died a few months before the malpractice trial. By stipulation, the district court dismissed Mutuelles' claim against his estate.

ence between one million dollars and $3,115,381. It also awarded approximately $68,000, to cover the litigation costs charged by Kroll.

The district court awarded pre-judgment interest in the amount of $611,370.34. Mutuelles petitioned for additional compensation to cover the decline in the value of the dollar compared to the French franc between the time Mutuelles paid the Morrills and the time Mutuelles could collect on the malpractice judgment. The district court refused to award additional compensation. Both parties appealed.

## DISCUSSION

### I. *Federal Jurisdiction*

■ Diversity jurisdiction exists between "citizens of a State and citizens or subjects of a foreign state" where the amount in controversy exceeds fifty thousand dollars. 28 U.S.C. § 1332(a)(2). Jurisdiction is determined at the time the lawsuit is filed. *Faysound Ltd. v. United Coconut Chems., Inc.*, 878 F.2d 290, 296 (9th Cir.1989). The citizenship of each member of a partnership must be considered. *Carden v. Arkoma Assoc.*, 494 U.S. 185, 195, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). "Diversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants." *Cheng v. Boeing Co.*, 708 F.2d 1406, 1412 (9th Cir.), *cert. denied*, 464 U.S. 1017, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983).

In its answer to Mutuelles' complaint, Kroll admitted that: "All of the members of Kroll, Pomerantz & Cameron are citizens of California, New York, or other States of the United States ..." If, as Kroll now contends, several partners were not "citizens of California, New York, or other States of the United States," it must establish evidence to substantiate its claim.

■ Kroll first raised the issue of jurisdiction almost four years after admitting the necessary jurisdictional facts. We recognize that a party may challenge the existence of jurisdiction at any time in the proceedings. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir.1990). The prob-

lem is Kroll's failure to substantiate its claim. Kroll submitted an affidavit of one of its partners, Patrick Moynihan, who declared that he had dual Irish–American citizenship, and Kroll also requested judicial notice of its 1986 listing in Martindale–Hubbell, wherein Andre and Oliver Brane are listed as French partners of Kroll. Kroll argues that the dual citizenship of these partners defeats jurisdiction under § 1332(a)(2) in reliance upon *Faysound*, which denied § 1332(a)(2) jurisdiction because of an alien co-defendant corporation. *Faysound*, 878 F.2d at 295.

■ We reject the argument. Dual citizenship (even when established) does not defeat jurisdiction. *See Sadat v. Mertes*, 615 F.2d 1176, 1187 (7th Cir.1980) ("only the American nationality of the dual citizen should be recognized" under § 1332(a)(2)). *See also Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2nd Cir.1991) (same). The district court had jurisdiction.

### II. *The Jury Instructions*

Kroll assigns error to the giving of jury instructions 28, 29 and 42. Kroll complains that these jury instructions prejudiced its defense. Kroll's argument lacks merit.

Jury instruction 28 provided, in pertinent part, "when a lawyer or law firm retains a supervisory role in the handling of the case, he may be liable for failing to perform those supervisory duties in accordance with the standard of care common to supervising lawyers." Kroll acted as supervising attorney for Mutuelles in America. The instruction did not unfairly burden Kroll.

■ Jury instruction 29 provided: "The lawyer's duty to the client includes the obligation to attempt to effectuate reasonable settlement of the action where the general standards of professional care require that the most reasonable manner of disposing of the action is by settlement." The jury instruction generally conforms with *Lysick v. Walcom*, 258 Cal.App.2d 136, 65 Cal.Rptr. 406 (1968). It complies with California law.

■ Jury instruction 42 provided:
Contributory negligence is negligence on the part of a plaintiff which, combin-

ing with the negligence of a defendant, contributes as a proximate cause in bringing about the injury. Contributory negligence, if any, on the part of the plaintiff, does not bar a recovery by the plaintiff against the defendant, but the total amount of damages to which the plaintiff would otherwise be entitled shall be reduced in proportion to the amount of negligence attributable to the plaintiff....

A client who retains an attorney is entitled to assume that the attorney is competent, and to rely on the attorney's advice. Thus, the client is not required to second-guess the attorney while the case is in progress.

Kroll argues that the second paragraph negates the comparative negligence defense. We reject the argument. *See Li v. Yellow Cab Co. of California,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 862–63, 532 P.2d 1226 (1975). The second paragraph states the obvious; a client may rely upon an attorney's expertise and need not get a second opinion.

III. *The Judgment Immunity Rule*

■ Kroll argues that the district court should have held it immune under California law. Liability for legal advice in California is limited by the Judgment Immunity Rule. The test for immunity is two-pronged: 1) whether the law was unsettled at the time the attorney gave the professional advice; and 2) whether the advice is based on the exercise of an informed judgment. *Davis v. Damrell,* 119 Cal.App.3d 883, 174 Cal.Rptr. 257, 259 (1981). A law firm is liable for legal malpractice when it breaches its duty to exercise the same skill, prudence and diligence possessed by other members of the bar. *Blain v. The Doctor's Co.,* 222 Cal.App.3d 1048, 272 Cal.Rptr. 250, 258 (1990).

This was a contested factual dispute wherein each side presented its version to a properly instructed jury. The jury, after due deliberation, returned a verdict for Mutuelles. We cannot say, after careful review, that nothing in the record supports the jury's findings that Kroll's actions constituted malpractice. *See Lands Constr.*

*Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1371 (9th Cir.1987) (verdict affirmed "even if it is possible to draw two inconsistent conclusions from the evidence.")

IV. *Application of Rule 17(a)*

Kroll complains that the district court erred by permitting ratification of the two co-insurers, Suisse Re and Lloyd's of London. Kroll asserts that ratification is improper if used to defeat a statute of limitations. Kroll's argument ignores crucial facts.

The district court must ratify any "real party in interest." Fed.R.Civ.P. 17(a) provides that:

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by ... the real party in interest; and such ratification ... shall have the same effect as if the action had been commenced in the name of the real party in interest.

The function of Rule 17(a) "is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." Rule 17(a) advisory committee's note.

■ A proper ratification pursuant to Rule 17(a) requires the ratifying party to: 1) authorize continuation of the action; and 2) agree to be bound by the lawsuit's result. *ICON Group, Inc. v. Mahogany Run Dev. Corp.,* 829 F.2d 473, 478 (3rd Cir.1987). It is uncontested that both Suisse Re and Lloyd's have made proper ratifications.

Mutuelles, as the lead insurer, brought this lawsuit on its own behalf. Mutuelles supervised the Morrill lawsuit, and ultimately settled the claim. *United States for Use and Benefit of Wulff v. CMA, Inc.,* 890 F.2d 1070 (9th Cir.1989), is distinguishable on its facts.

V. *The McKay Testimony*

■ Kroll argues that the district court erred by admitting the McKay declaration

and deposition. We review the admission of evidence for an abuse of discretion. *United States v. Marchini*, 797 F.2d 759, 762 (9th Cir.1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1288, 94 L.Ed.2d 145 (1987).

■ Under Rule 804, a witness must be "unavailable" to qualify for a hearsay exception. Rule 804(a)(4) declares a witness unavailable if "unable to be present or to testify because of death or then existing physical or mental illness or infirmity ..." Fed.R.Evid. 804(a)(4). Mutuelles informed the court of McKay's unavailability on the first day of trial, September 21st. McKay was available for examination that afternoon, but required surgery the next morning. The record establishes that McKay would be indisposed for one to two weeks. That was sufficient to support the court's conclusion that McKay was an unavailable witness.

Rule 804(b)(1) qualifies the deposition for admission. The Rule admits former testimony of an unavailable witness into evidence. The plain language of Rule 804(b)(1) supports the admission of the deposition.[2]

■ Admission of the declaration, however, is another matter. To be admissible, the declaration must: 1) have "circumstantial guarantees of trustworthiness" equivalent to the other four exceptions listed in Rule 804; 2) be offered as evidence of a material fact; 3) be more probative on the point for which it is offered than other evidence the proponent can obtain through reasonable efforts; 4) best serve the general purposes of the Rules and the interests of justice; and 5) be given with adequate notice to the adverse party. Rule 804(b)(5) "is not to be used as a new and broad hearsay exception, but rather is to be used rarely and in exceptional circumstances." *Fong v. American Airlines*, 626 F.2d 759, 763 (9th Cir.1980).

Under an identical provision in Rule 803(24) involving available declarants, we have required detailed findings for admission. *See United States v. Chu Kong Yin*, 935 F.2d 990, 1000 (9th Cir.1991); *Hal Roach Studios v. Richard Feiner and Co.*, 896 F.2d 1542, 1552 (9th Cir.1989). Specific findings fulfill two purposes: 1) they create a detailed record for review; and 2) they ensure that the district court has met all the necessary criteria before admitting evidence.

■ The district court erred by not making a specific finding that the McKay declaration was admissible under Rule 804(b)(5). Because the rationales underlying Rules 803(24) and 804(b)(5) are the same, a specific finding was required. Kroll was permitted, however, to cross-examine the declaration with a deposition. Under these exceptional circumstances, Kroll was not unfairly prejudiced by the use of the declaration, but we must determine whether the declaration: 1) met the notice requirement; and 2) had adequate guarantees of trustworthiness.

■ Adequate notice gives adverse parties an opportunity to attack the trustworthiness of the evidence. *Piva v. Xerox Corp.*, 654 F.2d 591, 596 (9th Cir.1981). Mutuelles informed counsel for Kroll three days before the trial that McKay had an upcoming surgery. Mutuelles offered to videotape the testimony, but Kroll refused. Kroll had ample notice, but rejected every suggested alternative because, as candidly admitted, it did not want the testimony in evidence.

We have admitted grand jury testimony under 804(b)(5). *Marchini*, 797 F.2d at 762–65. The First Circuit has admitted an affidavit when other circumstantial guarantees of trustworthiness were present. *Furtado v. Bishop*, 604 F.2d 80, 91 (1st Cir.1979), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980). In *Furtado*, the affiant was an attorney with a good reputation, had no personal interest in the

---

**2.** Fed.R.Evid. 804(b) provides:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) **Former Testimony.** Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

**714**

dispute, and had parts of his affidavit corroborated by other evidence. *Id.*

An oath alone is insufficient to guarantee the trustworthiness of the affiant. *See United States v. Fernandez*, 892 F.2d 976, 981 (11th Cir.1989), *cert. dismissed*, 495 U.S. 944, 110 S.Ct. 2201, 109 L.Ed.2d 527 (1990); *United States v. Synder*, 872 F.2d 1351, 1355 (7th Cir.1989). As observed in *Fernandez:* "An oath alone, however, is an inadequate safeguard to meet the requirement of Rule 804(b)(5) that the statement have 'equivalent circumstantial guarantees of trustworthiness'; otherwise, Congress could have dispensed with the cross-examination requirement codified in Rule 804(b)(1)." *Fernandez*, 892 F.2d at 981.

The admission of the deposition in conjunction with the declaration provided an adequate guarantee of trustworthiness. The deposition was available for use in cross-examination of the declaration. The declaration was taken under oath. McKay is subject to a penalty of perjury. That combination constitutes sufficient indicia of trustworthiness. Its admission was not an abuse of discretion.

## VI. *Interest Awards*

Finally, we consider Kroll's appeal to vacate the award of pre-judgment interest, as well as Mutuelles' plea to augment the judgment because of the unfavorable currency fluctuation.

An award of pre-judgment interest is reviewable for abuse of discretion. *Western Pac. Fisheries v. S.S. President Grant*, 730 F.2d 1280, 1288–89 (9th Cir. 1984). In diversity jurisdiction, state law governs all awards of pre-judgment interest. *Lund v. Albrecht*, 936 F.2d 459, 464–65 (9th Cir.1991).

California Civil Code §§ 3287 and 3288 authorize awards of pre-judgment interest. The district court relied upon § 3288, which provides: "In an action for the breach of an obligation not arising from contract … interest may be given, in the discretion of the jury." Cal.Civ.Code § 3288 (West 1970). California also grants this right to the trial judge. *In re Pago Pago Aircrash of January 30, 1974*, 525

F.Supp. 1007, 1012 (C.D.Cal.1981). The district court did not abuse its discretion in awarding pre-judgment interest.

We have refused to upgrade an award because of a decline in world oil prices. *Stinnett v. Damson Oil Corp.*, 813 F.2d 1394, 1398 (9th Cir.1987). Our decision in *Leslie Salt Co. v. St. Paul Mercury Ins. Co.*, 637 F.2d 657 (9th Cir.1981), is not in conflict. Mutuelles is not asking for an inflation surcharge, but for an additional award based on fluctuating currency prices.

Mutuelles contractually settled with the Morrills in dollars, not francs. *See William McCrindle & Son, Ltd. v. Durant*, 611 F.2d 89, 91 (5th Cir.1980). Although currency fluctuations caused Mutuelles to lose francs, it could have received a windfall had the fluctuation differed. The district court did not err in denying Mutuelles' petition.

Each party shall bear its own costs.

AFFIRMED.