5 F.3d 538
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Kenneth E. PECK, dba Hy Speed Machining, Plaintiff-Appellant,
v.
MIN-E-CON P, a California partnership; Wendell Jacobs;
John H. Brown, Defendants-Appellees.
Kenneth E. PECK, dba Hy Speed Machining, Plaintiff-Appellee,
v.
MIN-E-CON P, a California partnership; Wendell Jacobs;
John H. Brown, Defendants-Appellants.
 Nos. 91-36213, 91-36214.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 4, 1993.
Decided Aug. 26, 1993.
 
 Appeal from the United States District Court for the District of Oregon; No. CV-89-00643-WMD, William M. Dale, Jr., Magistrate Judge, Presiding.
 D.Or.
 AFFIRMED.
 Before: TANG, POOLE and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Min-E-Con P, a California partnership of Wendell Jacobs and John H. Brown, appeals the entry of judgment by the district court on a jury verdict and award to Kenneth E. Peck, dba Hy Speed Machining, for damages arising from a contract dispute. Min-E-Con asserts that the district court erred by excluding evidence as cumulative, by giving erroneous jury instructions, and by improperly denying a motion for a new trial. Peck cross appeals the court's denial of his motion for prejudgment interest. We affirm the verdict and judgment and the denial of prejudgment interest.
 
 
 3
 * Peck and Min-E-Con entered into an installment contract providing for the sale of 200,000 machined metal shells from Peck to Min-E-Con in monthly installments to begin January 1989. Min-E-Con assembles metal shells into electrical connectors, which it sells to customers such as Westinghouse and Teleco. Westinghouse incorporates the connectors into a radar system for the F-16 aircraft, while Teleco incorporates the connectors into underground oil drilling telemetry equipment. In April 1989, Min-E-Con cancelled the contract, alleging that the metal shells in the January and February shipments contained a non-conformity--metal spurs, or "burrs"--which substantially impaired the value of the contract. Min-E-Con claims that Peck refused to cure this non-conformity after Min-E-Con asked for adequate assurances of performance. Peck claims that the alleged non-conformity was pretextual. The jury returned a verdict for Peck and awarded Peck the amount due on the contract, $437,790.00. The district court denied Peck's request for prejudgment interest on the award.
 
 II
 
 4
 Min-E-Con first argues that the district court erred in excluding the depositions of Edward Wayson from Westinghouse and Ronald Romano from Teleco, which would have provided evidence of the potential consequences of failure of the electrical connectors due to the presence of the burrs, and of their reluctance to buy connectors made from shells with burrs. The magistrate judge ruled that the proffered evidence was cumulative.
 
 
 5
 Min-E-Con had already introduced testimony by Jacobs describing the presence of burrs in the shells and the use of Min-E-Con's electrical connectors by Min-E-Con's customers such as Westinghouse and Teleco. Jacobs further elaborated on Westinghouse's use of Min-E-Con's electrical connectors in the F-16 aircraft radar system, Teleco's use of the connectors in oil drill bit underground telemetry assemblies, and the need for high quality connectors for use in these applications. Min-E-Con had also presented deposition testimony by presidents of two other electrical connector manufacturers that the custom in the industry was to use burr-free shells, that Peck's shells contained burrs, and that the shells were thus unacceptable and properly rejected.
 
 
 6
 The magistrate judge's ruling that the proffered testimony was cumulative was not an abuse of discretion. Burgess v. Premier Corp., 727 F.2d 826, 833 (9th Cir.1984). Unlike cases relied upon by Min-E-Con, this is not one in which the court limited the number of witnesses or the time allotted to the parties without regard to the relevance of the testimony, see Coal Resources, Inc. v. Gulf & Western Indus., 865 F.2d 761, 769-70 (6th Cir.) (finding reversible error where the trial judge limited each party to two experts without regard to the relevancy of the testimony), amended on other grounds, 877 F.2d 5 (6th Cir.1989); in which the excluded evidence was the only evidence available for resolving a critical issue, see Robbins v. Whelan, 653 F.2d 47, 52 (1st Cir.), cert. denied, 454 U.S. 1123 (1981) (finding error where the evidence excluded for not being relevant was the only evidence establishing a relationship between skid marks and car speed in a car accident); Schleunes v. American Casualty Co., 528 F.2d 634, 636-38 (5th Cir.1976) (finding error where the trial court excluded a mechanical demonstration of a rifle where the steps involved in firing the rifle were helpful in determining if a fatal self-inflicted rifle wound was suicide or accident); or in which the excluded evidence was expert testimony, see Fox v. Dannenberg, 906 F.2d 1253, 1255-58 (8th Cir.1990) (concluding that Fed.R.Evid. 702 was an attempt to liberalize the admission of expert testimony).
 
 
 7
 Nor are Cox v. United States, 103 F.2d 133 (7th Cir.1939), or Kukuruza v. General Elec. Co., 510 F.2d 1208 (1st Cir.1975) helpful. In Cox, the excluded evidence was part of the same deposition from which evidence had been admitted, and the excluded parts related to the admitted portion. Cox, 103 F.2d at 137. In Kukuruza, the court excluded as cumulative evidence that the plaintiff had twice before omitted to mention the cause of the accident upon which he later relied at trial. Kukuruza, 510 F.2d at 1216. Min-E-Con's evidence had no such relevance independent from the statements contained in the depositions it proffered.
 
 
 8
 Because the depositions of Min-E-Con's customers were not the only unbiased evidence on the issue of substantial impairment, and were cumulative on the issues of trade custom and whether the burrs were really a non-conformity which could allow cancellation of the contract if not cured, there was no abuse of discretion.
 
 III
 
 9
 Min-E-Con next contends that the district court erred in instructing the jury. In diversity cases, "[s]tate law controls the substance of jury instructions" but "[t]he question of whether an incorrect instruction is prejudicially erroneous is governed by federal law." In re Asbestos Cases, 847 F.2d 523, 524 (9th Cir.1988) (citations omitted). The jury instructions must fairly and adequately cover the issues presented, correctly state the law, and not mislead the jury. Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1481 (9th Cir.1992). An error in instructing the jury in a civil case will not be reversed if "the error is more probably than not harmless." Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir.1992).
 
 
 10
 * Min-E-Con first argues that the court failed to adopt a subjective standard for what constitutes "substantial impairment" of an installment contract. Section 72.6120 of the Oregon Uniform Commercial Code governs the breach of an installment contract. Under Sec. 72.6120(3), the buyer can only cancel the entire contract "[w]henever nonconformity or default with respect to one or more installments substantially impairs the value of the whole contract...." Or.Rev.Stat. Sec. 72.6120(3) (1991).
 
 
 11
 The Oregon Supreme Court interpreted Sec. 72.6120 in Continental Forest Prod. v. White Lumber Sales, 474 P.2d 1 (Or.1970), but did not adopt a subjective test for "substantially impairs." Id. at 2-3. Min-E-Con asserts that since there is only one Oregon case interpreting the term "substantially impairs" in Sec. 72.6120, the trial court should have given an instruction which reflected the interpretation of similar language contained in Or.Rev.Stat. Sec. 72.6080, which governs the revocation of acceptance of a single lot of goods. Section 72.6080 states that "[t]he buyer may revoke acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to the buyer if the buyer has accepted it...." Or.Rev.Stat. Sec. 72.6080(1) (1991) (emphasis added). However, the omission of the phrase "to the buyer" in Sec. 72.6120 distinguishes Sec. 72.6120 from Sec. 72.6080. Further, revocation of acceptance, governed by Sec. 72.6080, is not at issue in this case. Min-E-Con never accepted the January and February installments and thereafter cancelled the contract.
 
 
 12
 Min-E-Con's reliance on Automated Controls, Inc. v. MIC Enterprises, Inc., 599 F.2d 288 (8th Cir.1979), is also misplaced. In holding that defects in some installments substantially impaired the value of the whole contract, the Eighth Circuit stated that the manufactured goods both "failed to meet the specifications of the National Electrical Code and completely failed to function as designed...." Id. at 289. This is not a subjective test.
 
 
 13
 Min-E-Con was thus not entitled to a jury instruction which substituted the standard of Sec. 72.6080 for that of Sec. 72.6120. Jury Instructions 16 and 17 correctly stated Oregon law under Continental Forest Products.
 
 B
 
 14
 Min-E-Con next argues that the trial court erred in instructing on anticipatory repudiation because Instruction 19 required the jury to find that the nonconformity of the installments substantially impaired the value of the installments in order for Peck's alleged refusal to cure to constitute anticipatory repudiation. Min-E-Con asserts that under Sec. 72.6090, which governs the right to adequate assurances of performance, only "reasonable grounds" for insecurity are required for a buyer to be able to demand adequate assurances of performance and for anticipatory repudiation to occur if the seller does not then give adequate assurances; and that Instruction 19 improperly focused on the criteria of Sec. 72.6120, which requires substantial impairment of the contract. Or.Rev.Stat. Sec. 72.6120(3).
 
 
 15
 Section 72.6100, which governs anticipatory repudiation, provides that remedies for anticipatory repudiation only become available "[w]hen either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other...." Or.Rev.Stat. Sec. 72.2610 (1991) (emphasis added). While Min-E-Con cites one case in which the Seventh Circuit found that repudiation had occurred without making an explicit finding that the contract had been substantially impaired, the issue before that court was whether the buyer was required to make a written demand for adequate assurances, not whether the contract had been substantially impaired. AMF, Inc. v. McDonald's Corp., 536 F.2d 1167, 1170-71 (7th Cir.1976). It assumes substantial impairment and is not helpful to Min-E-Con.
 
 
 16
 Instruction 19 did not misstate the law. Even though the court's instruction does state that the jury had to find substantial impairment of the value of the installments, and not substantial impairment of the value of the entire contract, this worked in Min-E-Con's favor, and was not prejudicial to it.
 
 C
 
 17
 Min-E-Con's third claim of error is that Instruction 19 was erroneous because it mistakenly stated that Peck had asserted anticipatory repudiation. However, Peck proposed a jury instruction which stated "if you find that ... Hy Speed made a substantial beginning of their manufacture before Min-E-Con gave Hy Speed notice that Min-E-Con was repudiating the agreement, then you should find that a contract or agreement was formed...." Therefore, the court's reference to Peck's contention that Min-E-Con repudiated was not erroneous.
 
 D
 
 18
 Finally, Min-E-Con asserts that Instructions 14 and 15 were misleading. Instruction 14 addressed the January shipment of 20,000 shells, and instructed the jury that in order for Peck to recover the price for that shipment, he had to prove that they conformed to the specifications of the contract. Min-E-Con argues that since Instruction 15 set forth Peck's claim for the remaining shipments without mentioning the burden of proof, the jury could believe that Peck had to prove only that the January shipments were conforming by a preponderance of the evidence, while he did not have to prove that the remaining shipments were conforming.
 
 
 19
 However, while Instruction 15 mentioned the remaining shipments, it was primarily a statement of agreed-upon facts in the case and contained no reference to the burden of proof or the way in which Peck could prevail on his claim for the remaining shells. Instructions 19 and 20 explained what was required for Peck to prevail on his claim for the remaining shells, and Instruction 11 informed the jury that Peck had the burden "to prove every essential element of his claim by a preponderance of the evidence." Therefore, taken as a whole, the jury instructions were not misleading on the issue of the burden of proof for the remaining shipments.
 
 IV
 
 20
 Min-E-Con's final contention is that the district court erred in denying its motion for a new trial. The denial of a motion for a new trial is reviewed for an abuse of discretion. Venegas v. Wagner, 831 F.2d 1514, 1519 (9th Cir.1987). Among the limited situations which warrant a reversal of the denial of a motion for a new trial are
 
 
 21
 (1) the trial court believes it lacks the power to grant a new trial, (2) it concludes that it may not weigh the evidence, or it concludes the verdict is against the clear weight of the evidence but refuses to grant a new trial.
 
 
 22
 Landes Constr. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1372 (9th Cir.1987) (citations omitted). "As we cannot weigh the evidence for ourselves, we will reverse a denial of a new trial if we find one of these ... errors or if the record contains no evidence in support of the verdict." Id.
 
 
 23
 We are satisfied that the magistrate judge believed he could grant a new trial, that he evaluated the evidence and found "strong" evidence for Min-E-Con, but after weighing the evidence, concluded that the jury verdict was not against the "great weight" of the evidence. See Venegas, 831 F.2d at 1519; Landes, 833 F.2d at 1372. Although, as the trial judge recognized, there was strong evidence in Min-E-Con's favor, there was also evidence supporting the verdict--that Peck never refused to rework the January and February shipments, that Peck paid his sister-in-law to hand deburr all the shells for the remaining shipments, that Min-E-Con wanted to cancel the contract after firing the Min-E-Con general manager who made the contract for Min-E-Con with Peck, and that Min-E-Con's owners had accused Peck of paying off the general manager to obtain the contract. Therefore, the trial court did not abuse its discretion in denying the motion for a new trial on the grounds that the verdict was against the clear weight of the evidence.
 
 V
 
 24
 Peck has cross appealed the magistrate's denial of prejudgment interest on the jury award. A denial of an award of prejudgment interest is reviewed for abuse of discretion. See Mutuelles Unies v. Kroll & Linstrom, 957 F.2d 707, 714 (9th Cir.1992). In a diversity case, state law governs the award of prejudgment interest. Id. State law controls whether prejudgment interest is a question for the judge or jury. Id. Under Oregon law, "[a]lthough the jury is not required to compute the amount of interest, the verdict must provide for the recovery of interest before the court may include interest in the judgment and compute the specific amount due." Langfus, Inc. v. Queirolo, 668 P.2d 1245, 1247 (Or.Ct.App.), review denied, 675 P.2d 497 (Or.1983).
 
 
 25
 Peck failed to request prejudgment interest in the pre-trial order and to present the issue of prejudgment interest to the jury. Failure to request prejudgment interest in the pre-trial order does not bar recovery of prejudgment interest. E.g., Gelfgren v. Republic Nat'l. Life Ins. Co., 680 F.2d 79, 82 (9th Cir.1982); Soderhamn Mach. Mfg. v. Martin Bros. Container & Timber Prod. Corp., 415 F.2d 1058, 1064 (9th Cir.1969). However, since the issue of prejudgment interest was not presented to the jury, and therefore, the jury verdict did not provide for the recovery of interest, the trial court did not abuse its discretion in denying prejudgment interest.
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3