William S. LUND, Plaintiff–Appellee,

v.

Donald H. ALBRECHT,
Defendant–Appellant.

No. 89–55365.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1990.

Decided June 26, 1991.

Robert A. Olson, Irving H. Greines, Greines, Martin, Stein & Richland, Beverly Hills, Cal., for defendant-appellant.

John J. McCauley, Donald A. Daucher, Paul, Hastings, Janofsky & Walker, Costa Mesa, Cal., for plaintiff-appellee.

Before HUG, and D.W. NELSON, Circuit Judges, and REED,* District Judge.

* The Honorable Edward C. Reed, Jr., United States District Judge for the District of Nevada, sitting by designation.

HUG, Circuit Judge:

This diversity action concerns the dissolution of a partnership and the alleged breach of fiduciary duties by each of the two partners to the other. Lund's claim is that the partners reached a general format for dissolution of the partnership that was memorialized in an April 6 letter, but that the partnership was not dissolved until the formal agreement of dissolution was executed by the parties on June 4. Between those dates, Albrecht received offers on a parcel of real property for amounts considerably greater than the value placed on the parcel in their negotiations. He did not reveal this to Lund. The district court entered a summary judgment, concluding that the partnership was not dissolved until June 4 and that Albrecht breached his fiduciary duty as a partner in not revealing the offers. A jury found Lund entitled to $1.8 million in damages. The district court imposed a constructive trust on one-half of the proceeds of a later sale of the property by Albrecht, making the total judgment approximately $2.2 million.

Albrecht's counterclaim alleged a breach of fiduciary duty by Lund in his failing to reveal his interest in a piece of real property competing with the partnership property. The district court entered summary judgment for Lund, concluding that this interest was specifically stated in the June 4 agreement and that any claims concerning it were expressly waived in the agreement.

Albrecht appeals these judgments. We affirm.

The principal issues are:

(1) Whether the partnership dissolution was consummated in April or on June 4.

(2) Whether Albrecht continued to owe a fiduciary duty as a partner to Lund until June 4, and breached it by failing to disclose the offers.

(3) Whether Lund failed to disclose to Albrecht his interest in competing real property and, thus, breached his fiduciary duty to Albrecht.

(4) Whether the court erred in excluding certain opinion testimony on the value of a parcel of partnership land.

(5) Whether the court erred in imposing a constructive trust as a remedy.

I. *Facts and Procedural Background*

In 1971, Lund and Albrecht entered into a written partnership agreement and formed Terramics Associates. Terramics owned a variety of assets including a wholly owned corporation, Sunterra, Inc., which was involved in real estate acquisitions, development, and sales. Among the properties that Sunterra owned was a 190–acre parcel known as Parcel D. In August 1983, Lund and Albrecht discussed the possibility of dissolving Terramics and Sunterra by having one of the partners purchase the other's interest in these entities. Lund and Albrecht reached a tentative agreement in September 1983, whereby Albrecht would purchase Lund's interest for $2 million. However, the closing of the deal never took place, and the parties began renegotiating in early 1984.

On April 6, 1984, the parties reached what Lund characterized as "an agreement to agree" and what Albrecht called a final agreement. That same day, Albrecht sent Lund the following letter:

William S. Lund

910 Cagney Lane

Newport Beach, California 92663

Re: Settlement Discussions

Dear Bill:

In accordance with our discussions at breakfast this morning and subject to the same caveat about the litigation settlement privilege, I have prepared two schedules to reflect alternative ways of resolving our differences over the purchase and sale of your interest in Sunterra, Newport View–Wyoming and all of the other Terramics related assets.

We agreed to give you a final notice by Friday, April 20, 1984, of my decision as to the terms or the cash alternative. Under either scenario there is a one year note secured by a mortgage for the pur-

chase of your interest in the Wyoming assets of Newport View. The proposal excludes Villa Balboa and all other assets or entities related to The Newport Development Company, but otherwise contemplates the transfer to me of all of your interest in Terramics, Sunterra and related companies or entities.

If the schedules correctly reflect our agreement about the alternative methods of completing the transaction, please sign and return a copy of this letter together with the schedules. Please initial each of the schedules.

We will ask the lawyers and accountants to work out the details of the transfers as soon as we notify you of the alternative method that I have selected.
Read and agreed:
William S. Lund
April ____, 1984

Attached to the April 6 letter were two schedules which set forth in two-column skeletal form the two possible buy/sell approaches. One schedule was labeled "Cash Settlement Summary," the other "Terms Settlement Summary." On April 11, 1984, Lund signed and returned the letter and initialed the two schedules. On the same day, Albrecht informed Lund that he chose the cash settlement proposal.

On June 4, 1984, after two months of negotiations, the parties executed a formal agreement setting forth in detail the terms of the partnership dissolution. Lund contends the June 4, 1984 document entitled "Agreement" was, in fact, the actual agreement between the parties. Albrecht, on the other hand, argued that the June 4 document was merely a "closing document" which formalized the prior agreement reflected in the April 6 letter.

Prior to signing the June 4 agreement, during May, 1984, Albrecht received four offers to sell Parcel D. These offers ranged in price from $9.95 million to $12 million. These offers valued Parcel D at $2–4 million higher than the price placed on Parcel D during negotiations between the parties to terminate the partnership. Lund was not aware of these offers, and Albrecht did not inform Lund of the offers.

In January 1985, Parcel D sold for $12.8 million.

After discovering that Albrecht had not disclosed the May 1984 offers for Parcel D, Lund ·filed this action against Albrecht. Among other things, Lund alleged in his complaint that Albrecht had breached his fiduciary duties and committed constructive fraud by failing to disclose the material offers to purchase Parcel D prior to June 4, 1984. In response, Albrecht filed an answer and a counterclaim against Lund, alleging that Lund had committed fraud and breach of fiduciary duty by failing to disclose a financial interest in Wilshire Redevelopment Company, a competing business entity.

Both parties filed motions for summary judgment. After reviewing all of the motions, the district court concluded that the parties did not reach a final agreement to dissolve their partnership until June 4, 1984; and, therefore, Albrecht breached his fiduciary duties by failing to disclose the material offers he had received prior to June 4.

Additionally, the district court held that the June 4 agreement specifically mentioned Lund's interest in the Wilshire property, and by an express provision in that agreement, Albrecht had waived any claims against Lund in relation to that property. Thus, the district court granted Lund a summary judgment on Albrecht's counterclaim.

Following these summary judgment rulings, the district court conducted a jury trial, submitting interrogatories and a special verdict. The jury found that Lund was entitled to $1,371,256 in compensatory damages and $407,949 in interest. The court augmented Lund's damages by $409,823, under a theory of unjust enrichment, and entered a final judgment in favor of Lund of approximately $2.2 million. The court reasoned that such an increase was within its equitable powers and in accordance with its pre-trial order.

## II. *Lund's Summary Judgment*

A grant of summary judgment is reviewed *de novo*, "viewing evidence in the

light most favorable to the nonmoving party to determine whether substantive law was correctly applied and whether there was any issue of material fact." *Liberty Bank of Montana v. Travelers Indem. Co.*, 870 F.2d 1504, 1505–06 (9th Cir.1989).

Albrecht contends that it was error for the court to order summary judgment when the relevance of the April 6 letter was disputed. We disagree. If the only controversy was the legal sufficiency of the April 6 letter, the district court could properly grant summary judgment. *See Kaylor v. Crown Zellerbach, Inc.*, 643 F.2d 1362, 1366 (9th Cir.1981) (Where the only controversy was the legal sufficiency of a letter, the district court was entitled to grant summary judgment as a matter of law that the letter was not a written contract.); *see also Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir.1989) (upholding a district court's grant of summary judgment which found that a memorandum did not constitute a legally binding contract for the sale of a business).

■ The district court's jurisdiction is based on diversity of citizenship and California substantive law applies. *See Stone v. Millstein*, 804 F.2d 1434, 1438 (9th Cir. 1986). The district court concluded that Albrecht owed fiduciary obligations to Lund at least through June 4, 1984, and granted summary judgment in favor of Lund. The rule in California is that "upon consummation of the sale of a partnership interest, the selling partner's interest and participation in the partnership are terminated." *Id.*, (citing *Wise Realty Co. v. Stewart*, 169 Cal. 176, 146 P. 534, 538 (1915)). The parties do not dispute this rule. In California, consummation occurs, and a partner's fiduciary duty ends, when the parties have formed and signed a contract to purchase the partnership interest. *Id.*

The parties also do not dispute that if the partnership existed until June 4, 1984, Albrecht's non-disclosure of the offers for Parcel D was a breach of fiduciary duty. *See* Cal.Corp.Code § 15018 (West Supp. 1990). However, if the partnership terminated on April 11, (the date of Albrecht's election of one of the two schedules) as Albrecht contends, then Albrecht's non-disclosure to Lund is not a breach of fiduciary duty. *See Nelson v. Abraham*, 29 Cal.2d 745, 177 P.2d 931, 934 (1947) (co-partners, under California law, owe a duty of good faith and a fiduciary duty to each other).

■ "Whether a writing constitutes a final agreement or merely an agreement to make an agreement depends primarily upon the intention of the parties." *Smissaert v. Chiodo*, 163 Cal.App.2d 827, 330 P.2d 98, 100 (1958). After reviewing the April 6 letter, we agree with the district court that it does not constitute an agreement between Lund and Albrecht to terminate the Lund/Albrecht partnership. The April 6 letter was merely an outline of what the parties had discussed. It was, as its language indicates, an "agreement about the alternative methods of completing the transaction." Only after the parties agreed upon which *method* they would use in terminating their partnership, cash or property settlement, could the parties undergo meaningful negotiations to determine the actual terms for their eventual dissolution. The letter contemplated that the assistance of accountants and attorneys would be required to work out the final agreement. The April 6 letter did not, by its terms, purport to be a final binding agreement of dissolution. The letter simply stated "Re: Settlement Discussions."

The June 4 agreement was a complete, detailed, ten-page agreement prepared by the parties' attorneys dealing with the complexities of the multiple properties held by the partnership. It dealt with the entities to be transferred, the entities not affected, on-going indebtedness relating to the entities, assumption of liability, indemnification, representations, warranties, and a myriad of other important legal provisions governing the obligations of the parties. It was signed not only by Albrecht and Lund but also by their spouses, a vital legal consideration in a community property state. The opening sentence of the agreement stated "This Agreement is made and entered into as of this 4th day of June, 1984." It did not state that this document

was to close or conclude the agreement made on April 11.

The district court correctly concluded that the June 4 agreement, not the April 6 letter, was the actual agreement for the sale and transfer of partnership assets and the dissolution of the partnership. The partial summary judgment on this issue was properly entered.

### III.  Constructive Trust

Albrecht contends that the district court erred in awarding Lund a money judgment of approximately $2.2 million. Albrecht argues that two errors compel reversal. First, he contends that because Lund dismissed his rescission cause of action earlier in the lawsuit, that Lund was precluded from pursuing all equitable relief otherwise available on his substantive tort claims. Second, Albrecht contends that the district court does not have inherent equitable powers to fashion a remedy to prevent Albrecht from being unjustly enriched as a result of his unlawful conduct. We disagree.

■■■  While Lund did dismiss his rescission cause of action, he did not foreclose his right to equitable relief. See Taylor v. Burlington N. RR. Co., 787 F.2d 1309, 1317 (9th Cir.1986) ("The doctrine of election of remedies is no longer strictly enforced in the federal courts."). Further, a constructive trust is a remedial device, not a substantive claim on which to base recovery, and does not depend upon a claim for rescission being set forth in the complaint. See 3 B. Witkin, California Procedure, § 470, p. 500 (ed. 1985); Cal.Civ.Code §§ 2223, 2224 (West Supp.1990).

A constructive trust is an available remedy for constructive fraud and breach of fiduciary duty. See Nguyen v. Scott, 206 Cal.App.3d 725, 253 Cal.Rptr. 800, 808–09 (1988); Heckmann v. Ahmanson, 168 Cal. App.3d 119, 214 Cal.Rptr. 177, 187–88 (1985); Mazzera v. Wolf, 30 Cal.2d 531, 183 P.2d 649, 651 (1947). Here, Albrecht breached his fiduciary duty, and the district court applied a constructive trust as an appropriate remedy for Lund, a victim of Albrecht's breach of fiduciary duty and constructive fraud.

■  Next, Albrecht argues that the court was constrained to limit its award to an "out of pocket" measure and could not exercise its equitable powers to prevent unjust enrichment. We disagree. In California, transactions between a vendor and vendee are governed by the "out-of-pocket" rule. See Cal.Civ.Code § 3343 (West Supp. 1990). However, here, where "the defrauding party stands in a fiduciary relationship to the victim of the fraud, the damages" are measured pursuant to the broader statutory tort measures of provisions of Cal. Civ.Code § 3333 (West 1970), § 1709 (West 1985). Pepitone v. Russo, 64 Cal.App.3d 685, 134 Cal.Rptr. 709, 711 (1976).

Here, the district court awarded to Lund a 50% interest in Albrecht's excess profits from Parcel D. Such a measure of damages is justified because Lund is entitled to recover a money judgment for all losses occasioned by Albrecht's breach of fiduciary duty, regardless of whether such losses were anticipated. Cal.Civ.Code §§ 1709, 3333; see also Lewis v. Upton, 151 Cal. App.3d 232, 198 Cal.Rptr. 494, 497 (1984). Further, under California law, the remedy of constructive trust is also available against a defendant to prevent unjust enrichment. Hence, a breaching co-partner is required to account for all profits or benefits, even if the other co-partner has not suffered a loss. See Bank of America v. Ryan, 207 Cal.App.2d 698, 24 Cal.Rptr. 739, 751 (1962).

### IV.  Interest Rate

■  The district judge awarded Lund the amount of his share of the sale price of Parcel D, plus interest at the rate of 10% on that amount, from the date of sale, January 25, 1985, to the date of judgment. Albrecht contends that this was error because it was an award of prejudgment interest at a rate that exceeds the maximum prejudgment interest rate allowed by art. XV, § 1 of the California Constitution. In diversity cases, state law governs the award of prejudgment interest. Davis &

*Cox v. Summa Corp.*, 751 F.2d 1507, 1522 (9th Cir.1985).

Article XV, § 1 of the California Constitution provides in pertinent part:

The rate of interest upon a judgment rendered in any court of this state shall be set by the Legislature at not more than 10 percent per annum. Such rate may be variable and based upon interest rates charged by federal agencies or economic indicators, or both.

In the absence of the setting of such rate by the Legislature, the rate of interest on any judgment rendered in any court of the state shall be 7 percent per annum.

Subsequent California case law has construed these provisions to apply to pre- and post-judgment interest alike. *Pacific–Southern Mortg. Trust Co. v. Ins. Co. of N.Am.*, 166 Cal.App.3d 703, 212 Cal.Rptr. 754, 761–62 (1985) (in the absence of any legislative act to the contrary, the rate of prejudgment interest is 7%); *accord Northrop Corp. v. Triad Int'l Marketing, S.A.*, 842 F.2d 1154, 1155 n. 2 (9th Cir. 1988); *Continental Airlines v. McDonnell Douglas*, 216 Cal.App.3d 388, 264 Cal.Rptr. 779, 805 (1989) (since there is no relevant legislative act specifying a rate of prejudgment interest at that time, the state constitutional 7% rate was applied). We held in *Davis & Cox* that prejudgment interest rate for the detention of money in California is limited to the legal rate of 7% per annum, applying art. XV, § 1 of the California Constitution. 751 F.2d at 1522.

■ Lund contends that the district court had the inherent power to award interest at a rate that exceeds 7%. We expressly held to the contrary in *Davis & Cox. Id.* at 1522 n. 4; *see also Armstrong v. Picquelle*, 157 Cal.App.3d 122, 203 Cal. Rptr. 552, 556 (1984) (equity does not have the power to disregard or set aside the express terms of legislation). Lund makes

the further argument that art. XV, § 1 of the California Constitution permits the legislature to provide for a higher rate of interest by statute and that there is express statutory authorization for the application of a higher rate of interest for constructive trusts. He relies upon section 16441 of the California Probate Code, which provides:

§ 16441. Interest amount

If the trustee is liable for interest pursuant to Section 16440, the trustee is liable for the greater of the following amounts:

(a) The amount of interest that accrues at the legal rate of judgments in effect during the period when the interest accrued.

(b) The amount of interest actually received.

He notes from the Commentary to the Code that this would permit the application of an interest rate of 10% for breaches of trust during the period here in question. However, this division of the Probate Code does not apply to constructive trusts. Section 15003(a), which is a provision in the same division of the Probate Code as section 16441, expressly provides "nothing in this division affects the law relating to constructive or resulting trusts." This excludes constructive trusts from the operation from section 16441. Thus, the statutory section upon which Lund relies does not provide for an interest rate greater than the constitutional rate of 7% to be applied to constructive trusts. There being no express statutory authorization for a greater rate, the prejudgment interest rate applicable here is limited by the constitutional rate of 7%. We must therefore remand for a recalculation of the prejudgment interest at a rate of 7% and a revision of the total amount of the judgment accordingly.[1]

---

1. The district court understandably relied upon a statement in our case of *United States v. Pegg*, 782 F.2d 1498, 1501 (9th Cir.1986), wherein we affirmed the use of a constructive trust remedy "plus the California legal rate of ten percent interest...." California does have a statute which provides for post-judgment interest at the rate of 10% per annum. Cal.Code Civ.Proc. § 685.010. It is apparent in the *Pegg* case that the distinction between pre- and post-judgment interest was not raised.

**466**

### V. *Exclusion of Testimony*

Albrecht also appeals the district court's exclusion of testimony by George Chalmers, as an expert witness, concerning the value of Parcel D. A district court has broad discretion in admitting and excluding expert testimony. *Taylor*, 787 F.2d at 1315. The court's decision will be sustained unless "manifestly erroneous." *Id.*

The district court excluded Chalmers' testimony as an expert witness because Albrecht failed properly to identify, list, and designate Chalmers as an expert witness.

Albrecht claims that Chalmers' opinion testimony should not have been excluded because he was an officer of the corporation owning Parcel D and, as a corporate officer, Chalmers could give his personal opinion on the parcel's value. The court excluded the testimony, recognizing that an *officer* may be able to give personal opinion testimony on land value. However, here, Chalmers would not admit in a deposition that he actually was an officer, and it appeared that Chalmers was only a part-time employee. Accordingly, he was not entitled to give opinion testimony on the value of Parcel D.

We find that it was not error to exclude Chalmers' expert testimony.

### VI. *Denial of Albrecht's Counterclaim*

Albrecht also appeals the district court's grant of summary judgment in favor of Lund with regard to Albrecht's counterclaim. In his counterclaim, Albrecht alleged that Lund had breached his fiduciary duties by failing to disclose his ownership as a general partner in the Wilshire properties, which were competing with entities of the Albrecht/Lund partnership.

The district court found that Albrecht was aware of Lund's involvement with Wilshire prior to signing the June 4 agreement. *See Blackman v. Howes*, 82 Cal. App.2d 275, 185 P.2d 1019, 1021 (1947) (lack of knowledge is an element in the charge of tortuously concealing a fact). Further, the June 4 agreement specifically mentioned the Wilshire properties and provided that Albrecht waived and released any claim he might have had against Lund arising from Lund's participation in Wilshire.

Albrecht argues he did not know that the June 4 agreement would serve as a release with regard to his counterclaim against Lund. Nonetheless, the express terms of the June 4 agreement acknowledged that Lund was an "owner of record" of Wilshire, that Albrecht "disclaims any interest" in Wilshire, that Wilshire belongs to Lund, and that Albrecht would make no claim against Lund with respect to Wilshire. The objective language of the June 4 agreement, not Albrecht's undisclosed subjective intention regarding the June 4 agreement, is what is legally binding upon the parties. *See Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir.1986) (applying California law); *Edwards v. Comstock Ins. Co.*, 205 Cal. App.3d 1164, 252 Cal.Rptr. 807, 809 (1988) (holding that releasor's submitted declaration in opposition to summary judgment as to his undisclosed intent was inadmissible to contradict the release). Therefore, we hold that the district court properly granted summary judgment in favor of Lund, since Albrecht had released all claims he had with regard to Wilshire in the June 4 agreement.

The judgment is AFFIRMED in part, REVERSED in part, and REMANDED.