5 F.3d 534
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 AMERICAN TELEPHONE & TELEGRAPH COMPANY, as successor in
interest to AT & T Information Systems,
Plaintiff-Counter-Defendant-Appellee,
v.
UNITED COMPUTER SYSTEMS, INC. Defendant-Counter-Claimant-Appellant.
AMERICAN TELEPHONE & TELEGRAPH COMPANY, as successor in
interest to AT & T Information Systems, Inc.,
Plaintiff-Appellee,
v.
UNITED COMPUTER SYSTEMS, INC.; North American Timeshare,
Inc., dba United Computer Systems, Defendants-Appellants.
 Nos. 91-56444, 92-55220, 92-55664, 92-56034, 92-55666.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 3, 1993.
Decided Sept. 15, 1993.
 
 1
 Before: BROWNING, FARRIS, and KELLY,* Circuit Judges.
 
 
 2
 MEMORANDUM**
 
 
 3
 North American Timeshare, Inc. appeals five separate orders of the district court: (1) an order awarding prejudgment interest against American Telephone and Telegraph Company (Appeal No. 91-56444); (2) an order staying arbitration and restraining North American Timeshare, Inc. from initiating or pursuing arbitration against AT & T (No. 92-55220); (3) an order imposing sanctions against North American Timeshare, Inc. (No. 92-55664); (4) an order vacating an arbitration award against AT & T and vacating an earlier order that had confirmed the award (No. 92-55666), and (5) an order permanently enjoining NAT from initiating or pursuing further arbitration proceedings against AT & T (No. 92-56034). AT & T successfully challenged in the district court an arbitration award in favor of United Computer Systems. The arbitration award resulted from United Computer Systems' claim that AT & T had violated a 1986 License Agreement between AT & T Information Systems, Inc. and United Computer Systems, Inc.
 
 DISCUSSION
 I. STANDING TO APPEAL
 
 4
 AT & T argues that NAT lacks standing to appeal from: (1) the district court's judgment vacating the confirmation order and vacating the arbitration award, and (2) the district court's award of prejudgment interest.
 
 
 5
 Article III limits the judicial power of the federal courts to "cases" and "controversies." Federal courts are presumed to lack jurisdiction, "unless the contrary appears affirmatively from the record." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 546 (1986) (internal quotation omitted). Challenges to constitutional standing cannot be waived or "conceded" by the parties. See id. at 541; San Diego Unified Port Dist. v. Gianturco, 651 F.2d 1307, 1309 n. 7 (9th Cir.1981), cert. denied, 455 U.S. 1000 (1982).
 
 
 6
 [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979), and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 38, 41 (1976).
 
 
 7
 Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982).
 
 
 8
 NAT, doing business as United Computer Systems, appeared in the district court and defended against AT & T's motion to vacate as the "successor in interest and attorney in fact" to United Computer Systems, Inc. NAT, also acting as "successor in interest" to United Computer Systems, Inc., timely filed a notice of appeal.
 
 
 9
 NAT argues that the issue of "standing" raised by AT & T has nothing whatever to do with the constitutional requirement of a case or controversy. We agree. In American Postal Workers Union v. U.S. Postal Serv., 861 F.2d 211, 213 (9th Cir.1988), we held that a local union had Article III standing to appeal the dismissal of its motion to vacate an arbitration award, even though the agreement giving rise to the right to arbitrate was between the employer and the national union. We distinguished between Article III standing and "standing" to arbitrate, which is more in the nature of capacity to sue, see id. at 214:
 
 
 10
 [T]he argument ... in this case has little to do with the constitutional doctrine of standing developed under article III.... Even if the Local Union is not a party to the collective bargaining agreement, it did represent the Local's interests in the arbitration and stands to lose or gain from our decision, thus it has a sufficient stake in the outcome to have article III standing.
 
 
 11
 Id. at 213. NAT has Article III standing to prosecute this appeal: it participated in the proceedings to vacate the arbitration award, and it stands to lose or gain from our decision on the merits.
 
 
 12
 AT & T argues that NAT has no cognizable interest in the proceedings to confirm or vacate the arbitration award because NAT lacked the contractual authority to demand arbitration and to seek to enforce the ensuing award. AT & T fails to differentiate between constitutional standing and capacity to sue. See id. at 213-14. The matter at issue is the former; AT & T's argument implicates only the latter.
 
 
 13
 AT & T also argues that NAT is a "nonparty" that cannot appeal the district court's vacatur. Ordinarily, an entity that is not a party in the district court may not appeal that court's judgment. E.E.O.C. v. Pan Am. World Airways, 897 F.2d 1499, 1504 (9th Cir.), cert. denied, 498 U.S. 815 (1990); Citibank Int'l v. Collier-Traino, Inc., 809 F.2d 1438, 1440 (9th Cir.1987). We permit nonparties to appeal, however, where they participated in the district court proceedings and where the equities favor an appeal. Pan Am. World Airways, 897 F.2d at 1504. We hold that this is an appropriate occasion to permit the appeal to proceed. See Bank of Am. v. M/V Executive, 797 F.2d 772, 774 (9th Cir.1986) (allowing nonparty appeal where it provides the "only avenue to obtain appellate review of the issue").
 
 
 14
 The district court's order confirming the arbitration award included an award of prejudgment interest to be paid to United Computer Systems. United Computer Systems cross-appealed, seeking a higher interest rate. For the same reasons that NAT has standing to appeal the judgment of vacatur, NAT has standing to prosecute the cross-appeal. AT & T does not contest NAT's standing as to the other three appeals, and the record reveals that the standing requirement is met as to those appeals.
 
 II. VACATUR (No. 92-55666)
 A. Timeliness
 
 15
 The arbitration award was rendered on December 28, 1990. Judgment was entered confirming the award on October 9, 1991. On March 20, 1992, AT & T petitioned the district court to vacate the confirmation order and to vacate the underlying award. On May 14, 1992, the district court vacated its confirmation order under Fed.R.Civ.P. 60(b)(3) and vacated the arbitration award under section 10 of the Federal Arbitration Act, 9 U.S.C. Sec. 10 (1988).
 
 
 16
 A Rule 60(b) motion must be made within one year after entry of judgment. Fed.R.Civ.P. 60(b). AT & T's motion to vacate the confirmation order was timely.
 
 
 17
 The Federal Arbitration Act permits the vacation of an arbitration award "[w]here the award was procured by corruption, fraud, or undue means." 9 U.S.C. Sec. 10(a)(1). Section 12 of the Act requires that notice of a motion to vacate an arbitration award "must be served ... within three months after the award is filed or delivered." 9 U.S.C. Sec. 12. Under California law, a petition to vacate an arbitration award must be filed and served within 100 days after the date of service of the award on the petitioner. Cal.Civ.Proc.Code Sec. 1288 (West 1982).
 
 
 18
 AT & T brought its first motion to vacate the arbitration award within three months of the award. When that motion was denied, AT & T appealed.[1] The motion for relief from judgment, however, was not brought within either the statutory period specified in the Federal Arbitration Act or that specified in the California Civil Procedure Code. NAT argues that AT & T's failure to comply with these provisions is fatal. It argues that Rule 60(b)(3) cannot be used to circumvent the statutory time limit, and that unless a meritorious challenge to an arbitration award is brought within the applicable statutory period, the award is binding.
 
 
 19
 In LaFarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp., 791 F.2d 1334 (9th Cir.1986), we considered an appeal from a denial of a Rule 60(b)(3) motion to set aside a judgment confirming an arbitration award. The party seeking vacatur, Kaiser, had filed timely a petition to vacate the arbitration award, but that petition was denied and the award confirmed. Kaiser then filed a motion under Rule 60(b)(3) within the one-year period required under that rule, but not within the three-month period established by the Federal Arbitration Act. We held that "Kaiser may not now collaterally attack the award under the guise of a motion to set aside the judgment confirming the award." Id. at 1339.[2]
 
 
 20
 NAT argues that LaFarge compels reversal of the order granting relief from judgment and vacating the arbitration award. NAT's reliance on LaFarge is misplaced. The movant in LaFarge failed to identify any fraud, misrepresentation or misconduct in the district court proceedings, but rather alleged only fraud in the underlying arbitration. It is for that reason that we barred the movant from attacking the arbitration award "under the guise" of a Rule 60 motion. Id. at 1338-39.
 
 
 21
 Although AT & T alleged fraud in the arbitration, it also alleged fraud in the district court proceedings to confirm or vacate the award. In LaFarge, we noted that "[f]raud alleged in the arbitration does not render the judgment fraudulently obtained." Id. at 1338. Neither does it render the judgment impervious to Rule 60 attack. Where, as here, the party seeking relief from judgment alleges fraud in the proceedings to confirm or vacate an arbitration award, LaFarge is no obstacle.
 
 
 22
 AT & T contends that after granting AT & T's Rule 60 motion, the district court properly vacated the underlying award. NAT relies upon LaFarge in arguing that the award is unassailable after the three-month statutory period has elapsed, even if the confirmation order is vacated. We reject NAT's argument. The movant in LaFarge failed to appeal the court's initial order confirming the arbitration award. Id. at 1338. His Rule 60(b)(3) motion was an attempt not only to circumvent the time limit contained in the Federal Arbitration Act, but also to avoid the effect of his failure to appeal.
 
 
 23
 AT & T filed its original motion to vacate the arbitration award within the time period specified in section 12 and within the analogous time period required under California law. AT & T timely appealed the denial of its motion. When AT & T discovered the alleged fraud, it sought and obtained an order remanding the case to the district court. On remand, the district court considered AT & T's Rule 60 motion. Thus, the proceedings on the Rule 60 motion for relief from judgment were a continuation of the proceedings initiated by AT & T within the statutory period. If the district court did not abuse its discretion in vacating the confirmation order, it properly considered AT & T's motion to vacate the arbitration award.
 
 
 24
 AT & T's challenge to the confirmation order and the arbitration award is not barred by the time constraints of either the FAA or the California Civil Procedure Code.
 
 B. Merits
 
 25
 To obtain relief from judgment under Rule 60(b)(3), AT & T was required to: (1) prove by clear and convincing evidence that the judgment confirming the arbitration award was obtained through fraud, and (2) establish that NAT's conduct prevented AT & T from fully and fairly presenting its case to the district court. See Jones v. Aero/Chem Corp., 921 F.2d 875, 878-79 (9th Cir.1990). Further, the fraud must "not [have been] discoverable by due diligence before or during the proceeding, and [it must have been] materially related to the submitted issue." Pacific & Arctic Ry. & Navigation Co. v. United Transp. Union, 952 F.2d 1144, 1148 (9th Cir.1991).
 
 
 26
 To prove fraud, AT & T was required to demonstrate that: (1) NAT made false representations of material fact; (2) NAT intended to induce AT & T to act; (3) the representations were made with knowledge of, or reckless disregard for, their falsity; and (4) AT & T justifiably relied upon those false representations to its detriment. See Bulgo v. Munoz, 853 F.2d 710, 716 (9th Cir.1988).
 
 
 27
 In finding that NAT obtained the confirmation judgment fraudulently; that NAT's fraud prevented AT & T from fully and fairly presenting its motion to vacate the arbitration award; and that AT & T exercised due diligence in uncovering the fraud, the district court merely recited the requirements for vacatur enumerated in Pacific & Arctic Ry., 952 F.2d at 1148. In fact, the district court adopted verbatim AT & T's proposed order, which, in turn, merely recited the relevant test.
 
 
 28
 The district court's findings, assuming they fairly can be attributed to its independent judgment, identify two sources of "fraud." First, the district court found that NAT and its counsel hid from AT & T and the court the identity of the entity that demanded and pursued arbitration and confirmation. Second, the district court found that NAT fraudulently misrepresented the status of its party-appointed arbitrator, Randy Knapp.
 
 1. CORPORATE IDENTITY
 
 29
 The record in this case is voluminous, but it is not sufficiently developed to permit us to ascertain whether NAT fraudulently hid its identity, or whether the district court's finding to that effect was clearly erroneous. It is, however, sufficient to enable us to hold that any "corporate identity fraud" was discoverable by AT & T upon its exercise of reasonable diligence[3].
 
 
 30
 NAT argues that the so-called "shellgame" by which NAT allegedly attempted to hide the fact that United Computer Systems, Inc. had terminated its involvement with UTILIS was "discovered" by AT & T as the result of AT & T's belated investigation into the affairs of United Computer Systems, Inc. Most, if not all, of the information used by AT & T to discover the changes in corporate identity was available to AT & T prior to or during the proceedings to confirm the arbitration award. AT & T launched an appropriate investigation only after: (1) a multimillion dollar award was rendered against it; (2) the award was confirmed; and (3) AT & T was confronted with the prospect of a second arbitration proceeding. The record leaves no doubt that AT & T, had it been motivated sufficiently, would have discovered the alleged fraud prior to the district court's judgment of confirmation.
 
 
 31
 The district court believed that AT & T could not have discovered the fraud "because of the efforts of the lawyers and officers of NAT to pull the wool over the eyes of these youngsters" who represented AT & T throughout most of the litigation. This finding is not supported by the record and is clearly erroneous.
 
 
 32
 2. KNAPP'S STATUS AS A "PERCIPIENT WITNESS"
 
 
 33
 The district court found that NAT misrepresented to the court the status of Randy Knapp, its party-appointed arbitrator. According to the court, NAT represented that Knapp was a "mere compiler" of arbitration exhibit 546 when in fact he "was a decision maker involved with UTILIS, the key product at issue in the arbitration." AT & T asserts that NAT intentionally misrepresented to the court that Knapp was not a "percipient witness" to the events leading up to the arbitration.
 
 
 34
 Knapp disclosed his relationship with Wespercorp (the predecessor to United Computer Systems, Inc.) and his participation in the preparation of exhibit 546. Nothing in his disclosure was false or misleading. In fact, immediately after Knapp disclosed his role in the preparation of exhibit 546, counsel for AT & T argued to the arbitration panel that Knapp had just "stated that he was a percipient witness for the preparation of Exhibit 546, which is essentially the forecast of UTILIS sales, which is the issue before the panel in this hearing today." Yet somehow AT & T convinced the district court that Knapp successfully hid his status as a percipient witness both from AT & T and from the district court.
 
 
 35
 The evidence presented by AT & T in support of its successful motion to vacate the confirmation award consists of two depositions of Knapp, both of which were conducted in November 1985 in connection with litigation unrelated to this case. Despite AT & T's arguments to the contrary, neither deposition indicates that Knapp was a percipient witness to the events surrounding the 1986 License Agreement or its alleged breach by AT & T. The court's finding of fraud is erroneous.
 
 
 36
 Even if the district court's finding of fraud could be sustained, its finding of reasonable diligence by AT & T is clearly erroneous. The only evidence produced by AT & T in support of its argument that NAT hid Knapp's status from the court and AT & T are the two 1985 depositions. The record contains nothing that would explain or excuse the failure of AT & T to discover those depositions in advance of the confirmation proceedings or, for that matter, during the arbitration itself.
 
 
 37
 The district court abused its discretion in granting Rule 60(b)(3) relief from its prior judgment confirming the arbitration award. Because the confirmation order was not obtained by fraud, the district court erred in vacating the underlying arbitration award. We vacate the district court's orders vacating the arbitration award and vacating the confirmation.
 
 III. PREJUDGMENT INTEREST (No. 92-56444)
 
 38
 In its order confirming the arbitration award, the district court ordered AT & T to pay to UCS prejudgment interest in the amount of $793,196.25. After AT & T appealed the confirmation order, UCS cross-appealed from the award of prejudgment interest, which, according to UCS, should have been calculated using California's statutory rate of interest. See Cal.Civil Code Sec. 3289(b) (West Supp.1993).
 
 
 39
 In diversity cases, state law governs the rate of prejudgment interest. See Mutuelles Unies v. Kroll & Linstrom, 957 F.2d 707, 714 (9th Cir.1992); Lund v. Albrecht, 936 F.2d 459, 464-65 (9th Cir.1991). The district court erred in calculating the amount of interest based on federal law.
 
 
 40
 IV. AT & T'S ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF (Nos. 92-56034, 92-55220)
 
 
 41
 On June 25, 1991, while the litigation over the first arbitration was pending, UCS filed another demand for arbitration against AT & T, this time alleging breaches of the License Agreement occurring subsequent to the first arbitration. On November 27, 1991, AT & T filed in federal court a complaint for declaratory and injunctive relief against United Computer Systems, Inc. and North American Timeshare, Inc. dba United Computer Systems. AT & T sought a judicial declaration as to the rights of the parties to demand and pursue arbitration. It also sought a stay of the second arbitration, pending the court's declaration of the rights and obligations of the parties.
 
 
 42
 After a hearing on January 13, 1992, the district court stayed the second arbitration between NAT and AT & T, pending a resolution to the dispute between NAT and AT & T concerning NAT's "standing" under the License Agreement to arbitrate. On July 27, 1992, the court resolved that dispute in favor of AT & T on summary judgment and permanently enjoined NAT from initiating or pursuing arbitration against AT & T.
 
 
 43
 We affirm the district court's order of January 13, 1992, insofar as it stays temporarily further arbitration between NAT and AT & T. We vacate the district court's judgment of July 27, 1992, and remand for further proceedings concerning AT & T's action for declaratory and injunctive relief. Upon remand, the case is to be reassigned to a judge other than Judge Hauk. See United States v. Jacobs, 855 F.2d 652, 656 (9th Cir.1988).
 
 V. SANCTIONS (No. 92-55664)
 
 44
 In response to AT & T's complaint for declaratory and injunctive relief, NAT filed a counterclaim, alleging inter alia that Judge Hauk acquired "personal knowledge" of "disputed evidentiary facts" when he had lunch with Retired Justice Macklan Fleming during the course of the litigation between NAT and AT & T. This accusation had been denied by Judge Hauk when NAT raised it in a motion for recusal under 28 U.S.C. Sec. 455(b)(1). At that time, Judge Hauk informed NAT that he "didn't learn anything from Justice Fleming at all about this case or discussed it with him even. Now where you got that is your dream." AT & T sought sanctions against NAT under Fed.R.Civ.P. 11, under 28 U.S.C. Sec. 1927, and under the court's "inherent powers." The district court imposed sanctions against NAT and its attorney, Steven J. Stanwyck, in the amount of $6,536.75.
 
 
 45
 In its written order, the district court did not specify the authority under which the sanctions were imposed. The hearing transcript indicates that the sanctions were imposed for filing a frivolous pleading under Rule 11 and for filing a pleading for an improper purpose, also under Rule 11.
 
 
 46
 NAT argued in its opening brief that sanctions may not be imposed without a finding of bad faith. It relied upon Zambrano v. City of Tustin, 885 F.2d 1473, 1478 (9th Cir.1989), which held that a specific finding of bad faith is required prior to imposing sanctions under the court's "inherent powers." Zambrano did not deal with Rule 11 sanctions. Further, we recently held that no finding of subjective bad faith is required prior to the imposition of sanctions under Rule 11. See Yagman v. Republic Ins., 987 F.2d 622, 628 (9th Cir.1993).
 
 
 47
 The district court did not clearly err, see Aetna Life Ins. Co. v. Alla Medical Servs., Inc., 855 F.2d 1470, 1474 (9th Cir.1988), in finding that the counterclaim was frivolous. See Unioil, 809 F.2d at 557 ("[A]n attorney violates rule 11 whenever he signs a pleading, motion, or other paper without having conducted a reasonable inquiry into whether his paper is frivolous, legally unreasonable, or without factual foundation."). The record fails to reflect that NAT and its counsel conducted any investigation into whether Judge Hauk and Justice Fleming discussed any material aspect of this litigation, even though Judge Hauk had specifically and categorically denied that they had done so. Rule 11 was violated. The district court did not abuse its discretion, see Aetna Life Ins., 855 F.2d at 1474, in imposing sanctions against NAT and Stanwyck.[4]
 
 VI. SANCTIONS ON APPEAL
 
 48
 AT & T seeks sanctions against NAT for filing frivolous appeals. We have authority to impose "just damages and single or double costs" under Fed.R.App.P. 38. We decline to do so.
 
 VII. CONCLUSION
 
 49
 The district court abused its discretion in granting AT & T's Rule 60(b)(3) motion for relief from judgment. We vacate the district court's order vacating the arbitration award and vacating the confirmation order. Consequently, the award stands confirmed. We vacate the district court's order granting AT & T declaratory and injunctive relief and remand that appeal with instructions that it be reassigned to another district judge for further proceedings. We reverse the district court's ruling concerning prejudgment interest and remand that appeal with instructions that interest be calculated in accordance with California law.
 
 
 50
 We affirm the stay order issued by the district court, to the extent it stays further arbitrations between NAT and AT & T pending the outcome of the remanded portion of this case. We affirm also the imposition of Rule 11 sanctions against NAT and its counsel.
 
 
 51
 Each side shall bear its own costs on appeal.
 
 
 52
 AFFIRMED in part, REVERSED in part, and VACATED AND REMANDED in part.
 
 
 
 *
 Honorable Paul J. Kelly, Jr., United States Circuit Judge for the Tenth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 After AT & T prevailed upon the district court to vacate the award under Rule 60(b)(3) and the Federal Arbitration Act, AT & T's appeal was dismissed under Fed.R.App.P. 42(b)
 
 
 [2]
 Although we held that Kaiser could not use Rule 60(b)(3) to circumvent section 12 of the Federal Arbitration Act, we nevertheless considered and rejected the Rule 60 motion on the merits
 
 
 [3]
 AT & T argues that it was not required to demonstrate due diligence in discovering the alleged fraud. The case it cites, Tas Int'l Travel Serv., Inc. v. Pan Am. World Airways, Inc., 96 F.R.D. 205, 207 (S.D.N.Y.1982), supports its argument. Our holding in Pacific & Arctic Ry., 952 F.2d at 1148, however, conflicts with the holding in Tas, requires due diligence, and controls
 
 
 [4]
 Because we find that the counterclaim was frivolous, we need not determine whether it also was filed for an improper purpose