11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Jean-Claude
Saada; CCC PMP M.O.B., Inc.; and CCC French M.O.B., Inc. 

Appellants

Vs.      
            No. 11-00-00240-CV  -- 
Appeal from Dallas County

Dr. James M.
Harrison 

Appellee

 

Upon
finding that appellants breached fiduciary duties owed to Dr. James M.
Harrison, the trial court entered a judgment in favor of Dr. Harrison for
actual damages of $189,681.44.  The
trial court also ordered each appellant to pay exemplary damages of
$50,000.00.  We affirm.  

Appellants
present nine issues for appellate review. 
In the first and second issues, they contend that the trial court erred
in determining that CCC PMP M.O.B., Inc. and CCC French M.O.B., Inc. breached a
fiduciary duty.  In the third and fourth
issues, appellants complain of the trial court=s finding that Jean-Claude Saada knowingly participated in a breach of
a fiduciary duty.  In the fifth issue,
appellants complain of the finding that their breaches were actuated by fraud
or malice.  In the sixth and seventh
issues, appellants contend that the trial court=s calculation of damages was erroneous.  In the final two issues, appellants argue that the award of
attorney=s fees and interest is erroneous based upon
the errors presented in the first seven issues.  








The
background facts in this case are largely undisputed.  Dr. Harrison was a limited partner in CCC PMP Medical Plaza
M.O.B., Ltd. (PMP, Ltd.) and CCC French Medical Plaza M.O.B., Ltd. (French,
Ltd.).  Appellants PMP and French were
the general partners of the partnerships in which Dr. Harrison was a limited
partner.  Dr. Harrison sold his
partnership interest and a note to Turtle Creek Realty, Inc., an affiliate of
appellants PMP and French.  Saada owned
all of the stock of the corporation that owned all of the stock of PMP, French,
and Turtle Creek.  As president, Saada
also controlled all of these entities. 
Shortly after Dr. Harrison sold his interests in the partnerships, the
real property that constituted the principal asset of each partnership was sold
to a third party with whom Saada had begun negotiating prior to the closing of
the purchase from Dr. Harrison. 
Appellants had not disclosed to Dr. Harrison these negotiations or the
existence of a potential third-party purchaser. 

In a
partial summary judgment, the trial court determined that appellants PMP and
French were liable for breaching a fiduciary duty owed to Dr. Harrison.  In the first issue, appellants argue that
the trial court erroneously applied Texas law, rather than California law, to
the issue of PMP=s and French=s breach of fiduciary duty and that, under California law, Dr. Harrison=s claim fails as a matter of law.  In the second issue, appellants contend that
there is a genuine issue of material fact Aas to whether such a cause of action exists.@  We
disagree.  








The
determination of which state=s law governs an issue is a question of law for the court to
decide.  Torrington Company v. Stutzman,
46 S.W.3d 829, 848-50 (Tex.2000); Duncan v. Cessna Aircraft Company, 665 S.W.2d
414, 421 (Tex.1984).  Texas has adopted
the "most significant relationship" test to determine choice‑of‑law
issues.  Gutierrez v. Collins, 583
S.W.2d 312, 318 (Tex.1979); see RESTATEMENT (SECOND) OF CONFLICT OF LAWS '' 6 & 145 (1971).[1]  In a tort case, the relevant contacts
include the place where the injury occurred; the place where the conduct
causing the injury occurred; the domicile, residence, nationality, place of
incorporation, and place of business of the parties; and the place where the
relationship, if any, between the parties is centered.  Section 145(2); Torrington Company v.
Stutzman, supra.  The number of contacts
with a state is not determinative; rather, the contacts must be evaluated in
light of the state policies underlying the particular substantive issue.  Torrington Company v. Stutzman, supra; Duncan
v. Cessna Aircraft Company, supra.  

The
substantive issue in this case is whether appellants are liable for breaching a
fiduciary duty.  Dr. Harrison was a
resident of California.  Saada was a
resident of Texas.  PMP and French were
California corporations with principal places of business in Texas and were
controlled by Saada.  See Torrington
Company v. Stutzman, supra.  Turtle
Creek Realty, the entity that purchased Dr. Harrison=s interests, was a Texas corporation.  Although each partnership=s main asset was real property located in
California, much of the conduct that caused Dr. Harrison=s injury occurred in Texas.  Saada conducted negotiations from
Texas.  Furthermore, Texas, as the forum
state, has a significant interest in protecting resident defendants; here,
appellants are counter-defendants. 
Saada chose Texas to be the forum state by filing this suit in Texas as
a declaratory judgment action against Dr. Harrison.  Ease in determining and applying the law is one of the factors to
be considered in resolving choice‑of‑law questions under Section
6(2)(g) of the Restatement.  Torrington
Company v. Stutzman, supra.  Considering
all of these factors, California does not have an overriding interest in seeing
its law applied in this case.  

Moreover,
even if California=s
substantive law had been applied, the result in this case would have been the
same.  In California, the selling
partner=s interest and participation in the
partnership are terminated Aupon consummation of the sale@ of the partnership interest. 
Lund v. Albrecht, 936 F.2d 459, 462 (9th Cir. 1991); Stone v. Millstein,
804 F.2d 1434, 1438 (9th Cir. 1986).  A
partner=s fiduciary duty ends upon consummation when
the parties have formed and signed a contract to purchase the partnership
interest.  Lund v. Albrecht, supra;
Stone v. Millstein, supra.  








Appellants
incorrectly assert that the sale was consummated prior to the negotiations with
the third-party purchaser.  The
stipulated evidence shows that Saada sent several letters to Dr. Harrison
regarding the sale of his interest in the partnerships and the note.  By a letter dated August 11, 1995, Saada set
out terms of a potential agreement and stated: AIf this is agreeable to you, please sign below so we can prepare
documents accordingly.@  By letter dated September 21, 1995, Saada
informed Dr. Harrison that the Aclosing has been delayed@ but that Awe
would still be interested in proceeding under the terms discussed.@ 
Another letter dated November 15, 1995, was written Ato confirm that we have agreed@ that Saada=s company has the option to acquire Dr. Harrison=s interest for $150,000 if the deal is closed
by the end of December 1995.  It did not
close by the specified date.  On
February 8, 1996, Saada sent a letter offering to purchase Dr. Harrison=s interest for $125,000.  Dr. Harrison did not accept the amended
offer.  On May 21, 1996, Saada informed
Dr. Harrison that yet another window of opportunity had arisen to purchase Dr.
Harrison=s interests and the note for $150,000.  With this letter, Saada sent an agreement
which was signed by Dr. Harrison on May 23, 1996.  This agreement stated that it superseded all prior oral or
written agreements between the parties. 
The sale of Dr. Harrison=s partnership interests was not Aconsummated@ until
May 23, 1996; thus, a fiduciary duty was owed to Dr. Harrison until that
date.  Saada, on behalf of PMP and
French, began negotiating with the third-party purchaser in April of 1996,
prior to consummation of the sale of Dr. Harrison=s interests.  The first and
second issues are overruled.  

In the
third issue, appellants contend that the trial court erred in its application
of the Aknowingly participated@ standard. 
In the fourth issue, they contend that the evidence is legally and
factually insufficient to support the trial court=s finding that Saada Aknowingly participated@ in the breach of fiduciary duty. 
In the fifth issue, appellants argue that the trial court erred in
finding by clear and convincing evidence that appellants acted with fraud or
malice because the finding was supported by no evidence or, alternatively, was
so against the great weight and preponderance of the evidence as to be
manifestly unjust.  








In order
to address the fourth and fifth issues, we will apply the well-recognized
standards of review.  To determine the legal
sufficiency of the evidence, we must view the evidence in the record in a light
which tends to support the finding of the disputed fact and disregard all
evidence and inferences to the contrary. 
If there is any evidence of probative force to support the finding, the
no‑evidence point must be overruled. 
Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex.1992); In re King's Estate,
244 S.W.2d 660 (Tex.1951); see also Merrell Dow Pharmaceuticals, Inc. v.
Havner, 953 S.W.2d 706, 711 (Tex.1997), cert. den=d, 523 U.S.
1119 (1998).  In order to determine if
the evidence is factually sufficient, we must review all of the evidence and
determine whether the challenged finding is so against the great weight and
preponderance of the evidence as to be manifestly unjust.  Pool v. Ford Motor Company, 715 S.W.2d 629
(Tex.1986); In re King's Estate, supra. 


In Texas,
a third party who knowingly participates in a fiduciary=s breach of duty becomes a joint tortfeasor
with the fiduciary and is liable as such. 
Kinzbach Tool Co. v. Corbett-Wallace Corporation, 160 S.W.2d 509
(Tex.1942); see also City of Fort Worth v. Pippen, 439 S.W.2d 660, 665
(Tex.1969).  Rather than finding that
Saada himself owed a fiduciary duty to Dr. Harrison, the trial court found that
Saada knowingly participated in the breaches of fiduciary duty committed by PMP
and French.  At trial and on appeal, the
parties debated the meaning of Aknowing participation.@  The trial court found,
however, that, under either side=s interpretation of that term, Saada knowingly participated in the
breaches of fiduciary duty.  

Appellants
assert that the evidence is insufficient to show that Saada knowingly
participated because Saada testified regarding his state of mind.  Saada testified that there was no legal
reason to inform Dr. Harrison about the potential, third-party purchaser
because Saada and Dr. Harrison already had a deal.  Saada=s
knowing participation, however, may be inferred from his actions.  See Spoljaric v. Percival Tours, Inc., 708
S.W.2d 432, 434 (Tex.1986).  Saada
conducted all of the negotiations with both Dr. Harrison and the third-party
purchaser.  Saada and Dr. Harrison began
negotiating in 1995 but did not sign an agreement until May 23, 1996.  Saada had already begun negotiations with
the third party before Dr. Harrison signed the agreement.  Dr. Harrison=s sale closed on June 28, 1996, and the third party purchased the
partnerships= principal assets for over two million
dollars in July of 1996.  Dr. Harrison
testified that Saada Awas
pushing me to get things handled@ by the end of June.  The trial
court, as the trier of fact, was in the position to view the witnesses and
determine the weight to be given to their testimony.  See Spoljaric v. Percival Tours, Inc., supra.  We hold that the finding that Saada
knowingly participated is supported by legally and factually sufficient
evidence.  The third and fourth issues
are overruled. 








Appellants= fifth issue addresses the legal and factual
sufficiency of the evidence regarding exemplary damages.  TEX. CIV. PRAC. & REM. CODE ANN. ' 41.003 (Vernon 1997) provides in part that
exemplary damages may be awarded only if the claimant proves by clear and
convincing evidence that the harm for which he seeks recovery of exemplary
damages resulted from fraud or malice. 
A finding of intent to harm or conscious indifference to the rights of
others will support an award of exemplary damages.  Spoljaric v. Percival Tours, Inc., supra at 436; see also
Trenholm v. Ratcliff, 646 S.W.2d 927, 933 (Tex.1983).  The evidence in this case shows that appellants breached a
fiduciary duty owed to Dr. Harrison, that they were aware of the pending
purchase from the third party, that the third-party purchase had been
negotiated prior to consummating the deal with Dr. Harrison, that appellants
failed to inform Dr. Harrison of the change in value of his partnership
interests, that appellants failed to disclose vital information, and that
appellants profited from this fraudulent self-dealing.  As stated by the court in International
Bankers Life Insurance Company v. Holloway, 368 S.W.2d 567, 584
(Tex.1963):  

We should
not say to defaulting fiduciaries that the most for which they can be held
accountable in equity are the profits which would have remained theirs had they
not been called to account.  

We hold that the evidence
is both legally and factually sufficient to support the award of exemplary
damages.  The fifth issue is
overruled.  

In the
sixth and seventh issues, appellants complain of the trial court=s inclusion of the value of a promissory note
in the damages awarded to Dr. Harrison because the note was outside the scope
of appellants= fiduciary duties and because Dr. Harrison=s assignment of the note limited his equity
therein.  The $200,000 note, which
included a security agreement, was originally made by Saada on behalf of PMP
Medical Office Building, Inc., of which Saada was president and sole
shareholder,  and was made payable to
PMP, Ltd., one of the partnerships in which Dr. Harrison was a limited
partner.  PMP, Ltd., assigned the note
to Dr. Harrison.  Similar notes were
assigned to the other limited partners. 
At the insistence of Saada, the note was included in the sale of Dr. Harrison=s partnership interests.  








Dr.
Harrison had collaterally assigned the promissory note to a third party in
order to secure obligations owed to the third party.  However, at the time of closing between Dr. Harrison and Turtle
Creek Realty and upon Dr. Harrison=s payment to the third party of $110,000 out of the $150,000 in
proceeds that he received for his interests in the partnerships, the third
party released its interest in the note. 
Thus, Dr. Harrison=s equity in the note was not limited by the previous collateral
assignment to the third party. 
Furthermore, subsequent to the sale of its principal asset to the
third-party purchaser, PMP, Ltd. paid off the promissory notes that had been
similarly assigned to other limited partners of PMP, Ltd.  These notes were paid at face value.  

We hold
that the trial court did not err in including the value of the promissory note
in its determination of damages. 
Appellants breached a fiduciary duty owed to Dr. Harrison.  As a result of this breach, Dr. Harrison
sold his interest in the two partnerships and the promissory note at a
depressed value.  The sixth and seventh
issues are overruled.  

In the
remaining two issues, appellants complain of the award of attorney=s fees, interest, and costs of court to Dr.
Harrison.  Appellants= assertions in these issues are based solely Aupon the aforementioned errors.@ 
Because we have found no error in the first seven issues, we overrule
the eighth and ninth issues.  

The
judgment of the trial court is affirmed. 


 

W. G. ARNOT, III

CHIEF
JUSTICE

 

January 17, 2002

Do not publish.  See
TEX.R.APP.P. 47.3(b).

Panel consists of:  Arnot, C.J., and 

Wright, J., and McCall, J. 











     [1]The court in Torrington listed the following
general factors from Section 6(2) of the Restatement as factors to be used to
decide a choice‑of‑law question:

 

(a) the needs of the interstate and international
systems,

 

(b) the relevant policies of the forum,

 

(c) the relevant policies of other interested states
and the relative interests of those states in the determination of the
particular issue,

 

(d) the protection of justified expectations,

 

(e) the basic policies underlying the particular field
of law,

 

(f) certainty, predictability and uniformity of result,
and

 

(g) ease in the determination and application of the law to be
applied.